BUNN CURTIS BREWER, EMPLOYEE v. POWERS TRUCKING COMPANY, EMPLOYER, AND IOWA MUTUAL INSURANCE COMPANY, CARRIER.

(Filed 12 January, 1962.)

1. **Master and Servant §§ 60, 61—** **Evidence held to take cause out of usual rule that accident occurring while employee is going to or from his employer's plant does not arise in course of employment.**

    Evidence to the effect that when an employee lacked transportation the employer sent its vehicle to transport the employee from his home to the plant and back to his home, that on the occasion in question claimant's car would not start and the employer sent a fellow employee to transport him to the plant, that thereafter claimant made a trip in the employer's truck to a farm in the regular course of the employment of loading poultry and transporting it to the plant, that on the direct route back to the plant claimant passed his home stopped only to get his car, got the assistance of his fellow employees and started his car so that the employer would not have to furnish him transportation back to his home after he had completed his duties at the plant, and that he was injured while driving his personal car on the direct route to the plant, *is held* to support a finding that the accident arose out of and in the course of employment, since the facts take the cause out of the usual rule that injury received while going to and from work does not arise in the course of employment.

2. **Master and Servant § 90—**

    The Industrial Commission has authority to review, modify, adopt, or

reject findings of a hearing commissioner and may *ex mero motu* strike out a finding of the hearing commissioner and his conclusion of law based thereon in order to make the record comply with the law, even though there is no exception to the finding or conclusion. G.S. 97-85.

**3. Master and Servant § 73a— Unintentional violation of statute, even though causing injury, does not require reduction of award.**

The fact that the accident causing plaintiff's injury was the result of his violation of statutory regulation governing the operation of motor vehicles on the highway does not warrant the reduction of the award under G.S. 97-12 if such violation was not wilful but merely negligent, and the action of the Industrial Commission in striking out the finding and conclusion of the hearing commissioner in regard to the reduction of the award will not be disturbed even though the Commission does not specifically find that the violation of statutory duty was not wilful, there being evidence that claimant's injuries resulted primarily when a following vehicle crashed into the rear of his vehicle after it was immobilized in the accident resulting from claimant's negligence.

APPEAL by defendants from *Gwyn, J.,* 30 January 1961 Civil Term of RANDOLPH.

This proceeding originated before the North Carolina Industrial Commission pursuant to our Workmen's Compensation Act.

A claim was filed by Bunn Curtis Brewer, an employee of the defendant Powers Trucking Company. A hearing was held before Commissioner Ransdell in Ashboro, North Carolina, on 18 May 1959. It was held that the accident causing injury to Bunn Curtis Brewer arose out of and in the course of his employment, and an award was entered granting compensation for temporary total disability. On appeal to the Commission the cause was remanded "for the purpose of taking additional evidence to the end that a determination of the issue of causation may be made and that a determination of the issue of whether plaintiff willfully failed in the performance of a statutory duty may be reached."

A second hearing was held before Deputy Commissioner Shuford in Asheboro on 22 March 1960; the parties stipulated:

"1. That the parties are subject to and bound by the provisions of the Workmen's Compensation Act, the defendant employer regularly employing five or more employees.

"2. That Iowa Mutual Insurance Company is the compensation carrier and was on the risk at the time complained of.

"3. That on and prior to September 8, 1958, plaintiff was regularly employed by the defendant employer at an average weekly wage of $75.00."

Findings of fact and conclusions of law pertinent to this appeal are as follows:

"1. That the defendant employer is a trucking concern which primarily hauls live poultry from farm to market.

"2. That plaintiff is 31 years of age and at the time complained of had been employed by the defendant employer for approximately three years; that his job was that of weighmaster or foreman of a work crew of eight men; that plaintiff and the men under his direction would receive instructions to go to a particular farm, catch, weigh, crate, and load on defendant employer's trucks live poultry for market; that plaintiff and the men working under him went to work customarily anywhere from 11:00 P.M. to 1:00 A.M. each work day and worked until the job was completed, usually arriving back at the employer's place of business around 10:00 A.M. the next morning; that plaintiff always came back to the employer's place of business, as he had been instructed, after the loading was completed to turn in the weight tickets on the poultry loaded, check to see if there existed any mechanical trouble with the trucks and if so get a mechanic to fix it, gas up the trucks, and put down the speedometer readings.

"3. That it was customary if an employee did not have transportation to go to the employer's place of business to begin work for the employer to send a vehicle after him and then carry him home when the work day was completed; that the employees, including the plaintiff, were not furnished transportation by the employer as a part of the contract of employment.

"4. That on the night of September 7, 1958, the battery in plaintiff's automobile was out of order and the employer sent a fellow employee to get him at his home; that he remained at the trucking company for approximately 20 minutes and received instructions to go to a farm 40 miles away at Graham and load some poultry; that three trucks and eight employees made the trip; that after the work there was finished and the poultry was weighed and loaded, plaintiff and the employees under him then left Graham to report back to the employer's office in Bennett, riding in the employer's pickup truck furnished for this purpose.

"5. That plaintiff's home was located 2-½ miles from the trucking company on the road leading from Graham to Bennett; that on the return trip from Graham, plaintiff requested the driver of the employer's pickup to stop at his (plaintiff's) home for him to secure his car, a Mercury automobile, to drive back to the trucking company so that the employer would not have to bring him back home after he had finished his work at the office; that plaintiff did not go inside his home but went directly from the company truck to his car, some 30 feet from the highway in his driveway; that at plaintiff's direction, the driver of the company pickup then pushed plaintiff's vehicle to get it

started, driving in the direction of Graham until the motor started; that plaintiff and the driver of the company pickup then turned around and went back toward the trucking company office; that the pickup stopped and picked up the other six employees who had been left in front of plaintiff's home, and they all started to the office, all eight employees except plaintiff then riding in the cab of the company pickup; that when they reached a point approximately two miles from the trucking company and one-half mile from plaintiff's home on the most direct route between said points, plaintiff's automobile collided with a State Highway truck on the truck's right-hand side of the road and on plaintiff's left-hand side of the road; that the company pickup then collided with the rear of plaintiff's vehicle.

(Findings of Fact Nos. 6 and 7 relate to injuries which are not in dispute on this appeal.)

"8. That in the way and manner set out in the previous findings, plaintiff sustained an injury by accident arising out of and in the course of his employment. * * *

"9. Prior to and at the time of the injury by accident giving rise thereto, plaintiff drove in the center of and on the left side of the highway. He also drove at a speed which was greater than was reasonable and prudent under the conditions then existing. Plaintiff's injury was caused by his willful failure to perform a statutory duty."

The Deputy Commissioner made the following conclusions of law:

"1. On 8 September 1958, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant employer. G.S. 97-2(6).

"2. (This conclusion of law relates to plaintiff's injuries only.)

"3. Plaintiff's injury was caused by his willful failure to perform a statutory duty and plaintiff's compensation should therefore be reduced ten per cent. G.S. 97-12; G.S. 20-141; G.S. 20-146."

An award was entered giving compensation to Bunn Curtis Brewer in accordance with these findings and conclusions. The defendants appealed to the Commission. After hearing and review, the Commission, Commissioner Peters dissenting, struck finding of fact No. 9 and conclusion of law No. 3, and amended the award accordingly. On appeal to the Superior Court the Commission's ruling was affirmed.

The defendants appeal, assigning error.

*Moody & Moody; Ottway Burton; Linwood T. Peoples for plaintiff appellee.*

*Simms & Simms for defendants appellant.*

DENNY, J.  The defendants assign as error the action of the court

below in overruling defendants' exception and assignment of error challenging the finding of fact to the effect that plaintiff sustained an injury by accident arising out of and in the course of his employment.

In our opinion, this case does not fall within the general rule that injuries sustained by an employee while on his way to or returning from work are not compensable. As stated in Volume I, Larson's Workmen's Compensation Law, Section 16.00, page 222: "The rule excluding off-premises injuries during the journey to and from work does not apply if the making of that journey, whether or not separately compensated for, is in itself a substantial part of the services for which the worker is employed." The principle applicable to the facts in this case is well stated in Volume I, *ibid.*, Section 25.00, page 384: "Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown." *Jackson v. Creamery*, 202 N.C. 196, 162 S.E. 359; *Michaux v. Bottling Co.*, 205 N.C. 786, 172 S.E. 406; *Mion v. Marble & Tile Co.*, 217 N.C. 743, 9 S.E. 2d 501; *Hardy v. Small*, 246 N.C. 581, 99 S.E. 2d 862; *Allred v. Allred-Gardner, Inc.*, 253 N.C. 554, 117 S.E. 2d 476.

In *Jackson v. Creamery, supra,* the plaintiff was employed to deliver milk and solicit customers. The Creamery was located outside but near the City of Asheville. Jackson had no regular hours but his day's work usually ended about 7:00 p.m. At the completion of his day's work, it was his duty to return the milk truck to the Creamery. On the day in question, having worked for fifteen hours, the plaintiff stopped and parked his employer's truck in front of a cafe and had supper, got a shave and haircut, and also shot a game or two of pool. Thereafter, while returning the truck to the Creamery he had an accident and was injured. The Industrial Commission concluded that even if the claimant temporarily abandoned his master's business when visiting the barber shop and poolroom and other places for his personal business and for his personal amusement, he resumed it on starting to return the truck of the master to its proper place, and awarded compensation. The ruling of the Commission was affirmed upon appeal to the Superior Court and the ruling of the lower court was upheld on appeal to this Court.

The facts in *Mion v. Marble & Tile Co., supra,* are similar to those in the instant case. In the *Mion* case, the office of the defendant employer was located in Charlotte, North Carolina. Six employees, including Alfred Mion, were working on a job some fifteen miles away in South Carolina. They reported for work at the office in Charlotte on the day in question and were transported by truck to the job site. At

the close of the work day, a sedan was sent to bring them back to Charlotte. To avoid overcrowding the car the foreman of the crew suggested that Mion ride back in the private automobile of a fellow employee. On the return trip there was an accident in which Mion was killed. This Court affirmed the Commission's ruling that the accident arose out of and in the course of the employment. *Winborne, J.,* now *C.J.,* speaking for the Court, said: "In the light of this evidence this case does not come within the rule that ordinarily injury by accident, while the employee is going to or returning from his work in a conveyance of a third person over which his employer had no control, does not arise out of or in the course of his employment. See *Smith v. Gastonia,* 216 N.C. 517, 5 S.E. 2d 540, and cases cited. But, rather, the evidence tends to show that at the time of the accident Mion was actually in the course of his employment, performing a part of his duty thereunder and for which he was being paid the same as when actually laying tile."

In the instant case, making the trip to Graham to load poultry and the return trip to the place of business of the employer in Bennett after the poultry was loaded, constituted a substantial part of the services for which the plaintiff was employed. We hold that under the facts in this case, the transfer of this employee from the truck of the employer to his automobile in order that he might have it so that he could return home after he made his required report at the office of his employer, did not constitute a distinct departure on a personal errand, disassociated from his master's business. No detour was involved. The plaintiff's home was located on the most direct route between Graham and Bennett. When the collision occurred, the plaintiff was proceeding on this direct route to the place of business of his employer. This assignment of error is overruled.

The defendants assign as error the action of the Commission in striking out finding of fact No. 9 by Deputy Commissioner Shuford and his conclusion of law No. 3 based thereon. The appellants argue this was error since the plaintiff did not appeal from the findings of fact or to the conclusions of law set out in the opinion and award filed by Deputy Commissioner Shuford.

In the case of *McDowell v. Town of Kure Beach,* 251 N.C. 818, 112 S.E. 2d 390, an award was made on 20 March 1958 by the hearing Commissioner in favor of plaintiff, awarding the employee $32.50 per week during a designated period for temporary total disability, and $4.88 per week for 300 weeks from and after 28 December 1957 for a fifteen per cent permanent partial disability. The defendant Town and its carrier appealed to the Full Commission. In the meantime the case of *Kellams v. Metal Products, Inc.,* 248 N.C. 199, 102 S.E. 2d 841,

was handed down on 9 April 1958, in which this Court held that compensation awarded an employee for permanent partial disability in accordance with the provisions of G.S. 97-31 was subject to the maximum and minimum provisions of G.S. 97-29. The last cited statute provides for a minimum compensation of $10.00 per week. The Commission determined that McDowell's accident giving rise to his claim fell within the period governed by the Kellams decision. Thereupon, the Commission held that the plaintiff was entitled, as a matter of right, to have his award amended to comply with the law. The award was amended by the Commission *ex mero motu* to provide for compensation to be paid plaintiff at the rate of $10.00 per week for 300 weeks from and after 28 December 1957 for his fifteen per cent permanent partial disability. On appeal to the Superior Court the Commission was reversed. The plaintiff appealed to this Court and we reversed the lower court and remanded the cause for further proceeding in accord with the law. In the *McDowell* case this Court said: " * * * (T)he Workmen's Compensation Act of North Carolina provides orderly procedure after an award is entered upon findings of fact and conclusions of law by the hearing Commissioner. It is provided by G.S. 97-85 that 'if application is made to the Commission within seven days from the date when notice of the award shall have been given, the Full Commission shall review the award, and, if good ground be shown therefor, reconsider the evidence, receive further evidence, rehear the parties, or their representatives, and, if proper, amend the award.' Indeed, an 'award of the Commission upon such review, as provided in G.S. 97-85, shall be conclusive and binding as to all questions of fact; but either party to the dispute may, within thirty days from the date of such award, * * * but not thereafter, appeal from the decision of said Commission to the Superior Court of the county in which the alleged accident happened, or in which the employer resides or has his principal office.' " (G.S. 97-86) This Court further held: " * * * (T)he Commission has, and ought to have authority to make its own records comply with the law — as indicated by the General Assembly; and it should do so even *ex mero motu*."

It is true that G.S. 97-12 provides in pertinent part: " * * * When the injury or death is caused by the willful failure of the employee to use a safety appliance or perform a statutory duty or by the willful breach of any rule or regulation adopted by the employer and approved by the Commission and brought to the knowledge of the employee prior to the injury, compensation shall be reduced ten per cent. The burden of proof shall be upon him who claims an exemption or forfeiture under this section."

The appellants contend that since the plaintiff did not appeal and,

therefore, did not comply with the requirements of Rule XX of the Commission, the Commission is bound by the findings of fact found by Deputy Commissioner Shuford. We do not concur in this view. Rules promulgated by the Commission are for the benefit of the Commission and must be complied with by the parties to a proceeding brought pursuant to the provisions of our Workmen's Compensation Act. However, these rules do not limit the power of the Commission to review, modify, adopt, or reject the findings of fact found by a Deputy Commissioner or by an individual member of the Commission when acting as a hearing Commissioner. In fact, the Commission is the fact finding body under our Workmen's Compensation Act. The finding of facts is one of the primary duties of the Commission. *Henry v. Leather Co.*, 231 N.C. 477, 57 S.E. 2d 760; *Beach v. McLean*, 219 N.C. 521, 14 S.E. 2d 515. A finding of fact by a hearing Commissioner or by a Deputy Commissioner never reaches the Superior Court or this court unless it has been affirmed by the Commission. 100 C.J.S., Workmen's Compensation, Section 687, page 1044. Certainly, the power to review the evidence, reconsider it, receive further evidence, rehear the parties or their representatives, and, if proper, to amend the award, carries with it the power to modify or strike out findings of fact made by the Deputy Commissioner or hearing Commissioner if in the judgment of the Commission such finding is not proper.

The appellants cite and rely upon the case of *Aetna Life Ins. Co. v. Carroll*, 169 Ga. 333, 150 S.E. 208, in support of their contention that finding of fact No. 9 by the Deputy Commissioner and the conclusion of law based thereon should be upheld. The Georgia Workmen's Compensation Act provides: "No compensation shall be allowed for any injury or death due to the employee's willful misconduct, including * * * willful failure or refusal to * * * perform a duty required by statute * * *."

In the last cited case the Supreme Court of Georgia held that the dependants of a deceased employee who approached a railroad intersection on the highway at a speed greater than that prescribed by the statute and collided with a train, were not entitled to recover compensation on the theory that the commission of a crime by an employee is willful misconduct within the meaning of the Georgia statute and the employer should not be required to pay compensation for the employee's injury or death due to his violation of the criminal statute, such violation being the proximate cause of his injury or death.

In the case of *Carey v. Bryan & Rollins* (Super. Ct.), 117 A. 2d 240, the Court rejected the rule laid down in the *Carroll* case, pointing out that the case deals with the construction of the words "willful misconduct" which do not appear in the Delaware statute although, in

other respects, the pertinent provisions of the Georgia statute is almost identical with the Delaware Compensation Act. This statement applies equally to our own Act. The Delaware Court said: "There is such conflict and confusion among the various statutes and decisions relating to this phase of the law of workmen's compensation, precedents from other jurisdictions are of little value. * * * The only reasonable course, therefore, is to confine ourselves to the precise language of our statute and an attempt to determine the intention of our Legislature. * * * I find the rule of the *Carroll* case to be unacceptably harsh when considered in the light of the humanitarian purposes of the Workmen's Compensation Law. It does not seem consonant with the spirit of such legislation to hold that a forfeiture of all rights of compensation may result from an inadvertent and unintentional violation of a traffic law. * * *

"It is held that violation of a penal motor vehicle statute does not, per se, constitute a 'wilful failure to perform a duty required by statute' and forfeiture under 19 Del. C. § 2353(b) and that, in order to invoke the forfeiture provisions of the Workmen's Compensation Law, the employer has the burden of proving by a preponderance of the evidence that the violation of the statute was 'wilful', *i.e.*, intentional and deliberate and not just careless and inadvert ent. * * *"

However, in the case of *Armour & Co. v. Little*, 83 Ga. App. 762, 64 S.E. 2d 707, the Court in considering the failure of an employee to use a safety device said: "The wilfulness contemplated by the statute amounts to more than a mere act of the will, and carries with it the idea of premeditation, obstinacy and intentional wrongdoing, so that the mere doing of a thoughtless act which does not constitute deliberate disobedience does not deprive one of compensation."

In striking out finding of fact No. 9 and the conclusion of law based thereon, in the instant case, the Commission may have concluded that the evidence warranted no more than a finding that the plaintiff carelessly and negligently operated his automobile at an excessive rate of speed and was guilty of negligence *per se*, but was not guilty of the willful failure to perform a statutory duty. If so, it would have been appropriate for the Commission to have so found. Even so, the action of the Commission was tantamount to a finding that the conduct of plaintiff did not warrant exaction of the ten per cent penalty. Moreover, a careful examination of the evidence leads us to the conclusion that it would be extremely difficult, if not impossible, to ascertain whether the plaintiff was the more seriously injured in the first collision when his car collided with the State Highway truck or in the second collision when the employer's truck was driven into the rear of plaintiff's automobile immediately after the first collision. Accord-

ing to the evidence of the Highway Patrolman, plaintiff's car left skid marks for 168 feet before it collided with the State Highway truck, and the employer's truck, which was following plaintiff's car, skidded 165 feet before it collided with the rear of plaintiff's automobile. The evidence further tended to show that the defendant employer's truck was being driven at a distance of approximately 100 feet behind the plaintiff's car immediately prior to the accident.

A careful consideration of the exceptions and assignments of error of the appellants leads us to the conclusion that the judgment of the court below should be upheld.

Affirmed.