ARMSTRONG v. W.R. GRACE & CO.

[175 N.C. App. 528 (2006)]

━━━━━━━

MARK J. ARMSTRONG, EMPLOYEE, PLAINTIFF V. W.R. GRACE & CO., EMPLOYER, CONTINENTAL CASUALTY COMPANY, CARRIER, DEFENDANTS

No. COA04-581

(Filed 17 January 2006)

**1. Workers' Compensation— most advanced specialty doctrine—not recognized**

There was ample support in the record in a workers' compensation case for the Industrial Commission's findings and conclusions that plaintiff's job was not the cause or an exacerbating condition of his underlying rheumatoid arthritis. The "most advanced speciality doctrine," advocated by plaintiff, was not recognized.

**2. Workers' Compensation— appellate role—whether findings supported by record**

The role of the Court of Appeals in a workers' compensation case is to determine whether the Industrial Commission's

findings are supported by the record. If so, as here, the decision is affirmed.

Judge WYNN concurring.

Appeal by plaintiff from opinion and award of the North Carolina Industrial Full Commission entered 5 December 2003 by Commissioner Laura Kranifeld Mavretic. Heard in the Court of Appeals 19 April 2005.

*Ben E. Roney, Jr., for plaintiff-appellant.*

*Young, Moore and Henderson, P.A., by J. Aldean Webster, III, for defendant-appellees.*

JACKSON, Judge.

On 9 April 2002, Deputy Commissioner Amy L. Pfeiffer heard Mark J. Armstrong's ("plaintiff") workers' compensation claim filed against W.R. Grace & Co. ("defendant-employer") and Continental Casualty Company ("defendant-carrier"), collectively defendants. On 8 May 2003, the Deputy Commissioner issued an Opinion and Award in favor of defendants. On 14 October 2003, the full Commission heard plaintiff's appeal. On 5 December 2003, an Opinion and Award in favor of defendants was filed by Commissioner Laura K. Mavretic, with Commissioner Bernadine S. Ballance concurring and Commissioner Thomas J. Bolch dissenting. It is from the full Commission's Opinion and Award that plaintiff appeals.

The full Commission's findings of fact tended to show that in 1975, defendant-employer hired plaintiff as a general helper. Plaintiff also worked as a maintenance helper, a machine operator, and a tooling assembler. Plaintiff worked for defendant-employer until he took a leave of absence due to pain and loss of range of motion in his elbows. As a machine operator for approximately thirteen years, plaintiff was required to use his upper extremities frequently and repetitively and with load-bearing force. Plaintiff prepared raw product, finished the product, and cleaned and adjusted the machines. Plaintiff's job duties required lifting, transporting, handling, reaching, and making load bearing movements. Plaintiff began to experience left elbow problems while working in May 1989. Shortly thereafter, plaintiff experienced pain in his right elbow while working. Plaintiff continued to work for defendant but did not seek medical treatment until 26 January 1990, when he was seen by Dr.

E. O. Marsigli ("Dr. Marsigli"), an orthopaedist. Plaintiff reported to Dr. Marsigli that he had been unable to fully extend his upper left extremity since May 1989.

On or about 23 December 1991, Dr. Marsigli diagnosed plaintiff with post traumatic arthritis of the left elbow. On 19 February 1996, however, Dr. Marsigli stated by letter that he could not determine the cause of plaintiff's bilateral elbow condition, and that "job related traumatic arthrosis of the elbow has not been described in the literature to his knowledge." On 8 July 1992, Dr. Helen E. Harmon ("Dr. Harmon"), a rheumatologist, diagnosed plaintiff with questionable rheumatoid arthritis. Dr. Harmon did not comment as to whether plaintiff's work situation caused or exacerbated his bilateral elbow symptoms.

On 21 July 1992, plaintiff transferred from the position of operator to tooling assembler, which required the use of both upper extremities to change inserts, change cavities, change needles and clean needles.

Plaintiff sought additional treatment from Dr. Ralph W. Coonrad ("Dr. Coonrad"), an orthopaedic surgeon, in October 1992. On 22 October 1992, plaintiff ceased employment with defendant. On 23 November 1992, Dr. Coonrad performed a left elbow replacement on plaintiff due to plaintiff's left elbow symptoms. After the surgery, Dr. Coonrad diagnosed plaintiff with arthrosis of both elbows due to rheumatoid arthritis.

A second physician, Dr. William Byrd ("Dr. Byrd"), diagnosed plaintiff with severe bilateral synovitis and pain of plaintiff's elbows with uncertain etiology on 3 August 1993. Dr. Byrd could not exclude rheumatoid arthritis as an underlying diagnosis. On 28 September 1993, Dr. Coonrad performed a total right elbow replacement.

Plaintiff received additional medical treatment later in 1993. On 21 December 1993, rheumatologist Dr. David S. Caldwell ("Dr. Caldwell"), determined that plaintiff might have an atypical presentation of rheumatoid arthritis. Dr. Caldwell further stated that plaintiff's job might have had something to do with plaintiff's bilateral elbow problems.

On 12 July 1994, plaintiff filed a Form 18 with the Industrial Commission. In the Form 18, plaintiff claimed that repetitive load bearing movements with his upper extremities caused traumatic arthritis. Plaintiff's bilateral elbow problems had begun five years

ARMSTRONG v. W.R. GRACE & CO.

[175 N.C. App. 528 (2006)]

prior to the filing of the Form 18 with the Industrial Commission; he was diagnosed with traumatic arthritis two and one half years prior to filing his Form 18 with the Industrial Commission; and he was diagnosed with rheumatoid arthritis twenty months prior to filing the Form 18.

Dr. Coonrad informed plaintiff on 3 May 1996, that it was unlikely that plaintiff's job caused his rapidly progressive and severe arthrosis of each elbow, and although it might have been an aggravating condition, Dr. Coonrad could not determine a percentage or degree of aggravation. Dr. Caldwell confirmed plaintiff's diagnosis of atypical presentation of rheumatoid arthritis when x-rays revealed that plaintiff was experiencing erosive changes in his feet in January 2001.

In October 2000, plaintiff filed a Form 33 requesting a hearing on this matter. There is no evidence in the record to show that other employees suffered from hand and arm injuries in the course of their employment. The Deputy Commissioner found that there has been no person other than plaintiff who has ever developed complete bilateral elbow joint destruction while performing an operator job with defendant-employer.

In Dr. Caldwell's deposition, he stated that (1) because of plaintiff's pre-existing rheumatoid disease, plaintiff had an increased risk of developing an exacerbation of his underlying rheumatoid arthritis compared to the general public not so employed; (2) plaintiff's job at defendant-employer for a person without rheumatoid arthritis posed no increased risk of the type of elbow problems plaintiff experienced; (3) plaintiff's job contributed to the advanced arthritis and the destruction of his bilateral elbow joints; and (4) plaintiff's elbow aggravation and the underlying disease process resulted in plaintiff's incapacity for continued work after 22 October 1992.

Another orthopaedic surgeon specializing in upper extremities, Dr. George S. Edwards ("Dr. Edwards"), testified that plaintiff's job subjected plaintiff's elbows to microtrauma due to its repetitive nature and that the job could have placed plaintiff at an increased risk of injuring his arms compared to the general public. However, Dr. Edwards testified that the job and plaintiff's performance did not have an effect on the cartilage destruction within plaintiff's elbows and the job did not cause or accelerate any permanent deterioration of his elbow joints.

In addition, Dr. Douglas H. Adams ("Dr. Adams") testified that although plaintiff's job required him to use his upper extremities

repetitively, Dr. Adams knew of no studies showing an association between work and the degree of force on the joint and the progression of rheumatoid arthritis and the destruction of joints.

On appeal, plaintiff-appellant argues that the Commission committed reversible error in finding for defendant-appellees, and presents eleven Assignments of Error citing various challenges to the full Commission's disposition of this case. In their response, defendants raise eight cross-assignments of error.

The standard of review in an appeal from the full Commission is limited to determining "whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). Our review " 'goes no further than to determine whether the record contains any evidence tending to support the finding.' " *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (citation omitted). The full Commission's findings of fact are conclusive on appeal when supported by competent evidence, even if there is evidence to support a contrary finding, *Morrison v. Burlington Indus.*, 304 N.C. 1, 6, 282 S.E.2d 458, 463 (1981), and may be set aside on appeal only "when there is a complete lack of competent evidence to support them[.]" *Young v. Hickory Bus. Furniture*, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000) (citation omitted).

[1] Of the eleven Assignments of Error submitted by plaintiff, only one challenges the Commission's Findings of Fact. In this assignment, plaintiff challenges the validity of Finding of Fact Number 16, the Commission's crediting of an orthopaedist's testimony over the testimony of a rheumatologist, premised upon this Court's applying a "most advanced specialty" doctrine that we have never before adopted or recognized. Plaintiff cites as authority a federal court case and argues that the court, or in this case the Commission, should credit the testimony of the most advanced specialist who treated a particular patient. *See Cosgrove v. Provident Life and Accident Insurance Co.*, 317 F. Supp. 2d 616 (E.D.N.C. 2004). This Court is unable to ascertain the existence of such a doctrine, nor has this Court ever recognized such a doctrine, and we decline to do so at this time. In the particular case upon which the plaintiff relies, the judge, acting as factfinder, merely credits the testimony he finds most compelling and credible. In that case, the credible diagnosis happened to originate from the specialist who treated the patient, as opposed to the primary care physician. *Id.* at 625.

Under our Workers' Compensation Act, the Commission is the factfinding body. *Brewer v. Powers Trucking Co.*, 256 N.C. 175, 182, 123 S.E.2d 608, 613 (1962). The Commission is the sole judge of the credibility of witnesses and the ultimate factfinder whether it is conducting a hearing or reviewing a cold record. *Adams*, 349 N.C. at 680-81, 509 S.E.2d at 413. On appeal, this Court does not " 'weigh the evidence and decide the issue on the basis of its weight . . . [t]he court's duty goes no further than to determine whether the record contains any evidence tending to support the finding.' " *Deese*, 352 N.C. at 115, 530 S.E.2d at 552 (citations omitted).

The full Commission reviewed depositions from three qualified physicians, and reviewed notes from another physician who was not present. It is clear that the Commission recognized the competing opinions of two of these physicians, Drs. Caldwell and Edwards, as to whether plaintiff's underlying disease was either caused or exacerbated by his job. Dr. Caldwell testified that plaintiff's job was an underlying aggravator, while Dr. Edwards testified that plaintiff's job "did not have an effect on the underlying cartilage destruction within plaintiff's elbow joints." The Commission acknowledged that Dr. Adams, a physician who did not treat plaintiff but reviewed his medical history and notes, also stated that he knew of no studies "showing an association between work and the degree of force on a joint and . . . the destruction of joints." Of the three physicians who testified, and the fourth whose notes were provided, the Commission concluded that only Dr. Caldwell opined that plaintiff's job aggravated his underlying arthritis. For that reason, and others within the exclusive purview of the Commission, the Commission concluded that plaintiff's job was not the cause or an exacerbating condition of his underlying rheumatoid arthritis. We find ample support in the record to affirm the Commission's findings of fact, and further find that those facts support the corresponding conclusions of law.

[2] The remaining Assignments of Error, if undertaken, would require this Court to weigh evidence, assess the credibility of witnesses, and substitute our judgment for that of the Commission's. As noted *supra*, that is neither our role nor our right. The role of this Court is to determine whether the Commission's findings of fact are supported by the record, and if so, its decision is to be affirmed. If there is competent evidence to support the Commission's findings, our inquiry ends. In the case at bar, we find that there is competent evidence to support the Commission's findings and we therefore affirm its findings of fact, and affirm its ruling in favor of defendants.

**ARMSTRONG v. W.R. GRACE & CO.**

[175 N.C. App. 528 (2006)]

Since we find for the defendants on the merits of the case, there is no need to reach their cross-assignments of error.

Affirmed.

Judge WYNN concurs in a separate opinion.

Judge Bryant concurs.

WYNN, Judge, concurring.

I agree with the result in the majority opinion but write separately to further consider Plaintiff's argument regarding the "most advanced specialty" doctrine, which has not been adopted by any court in North Carolina.

It is well established under our case law that findings of fact of the Industrial Commission are upheld on appeal if those findings are supported by "any competent evidence[.]" *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). It is important to note that Plaintiff does not argue that the opinions of doctors with specialties other than rheumatology would be incompetent evidence under the facts of this case. Instead, Plaintiff argues that the full Commission should have afforded the greatest credibility or highest quality of competence to the doctor/expert who has the "most advanced specialty" in the field of medicine the disease or injury concerns.

Plaintiff cites to *Cosgrove v. Provident Life & Accident Ins. Co.*, 317 F. Supp. 2d 616 (E.D.N.C. 2004), to support his theory of the "most advanced specialty" doctrine. In *Cosgrove*, the defendant insurance company denied the plaintiff's claim for long term disability after discounting the opinion of the plaintiff's treating physician, a specialist in the field of her disease, and instead relied upon the opinion of another doctor, not in the same specialty, who never treated the plaintiff but simply reviewed her medical records. *Id.* at 625. The court never announced a doctrine of needing to give greater weight to the doctor with the "most advanced specialty" but simply held that "there was a lack of substantial, objective evidence to discount the reliability and weight of Plaintiff's uncontradicted evidence of symptoms[.]" *Id.*

Here, Plaintiff was first treated by an orthopedist, Dr. Coonrad, who performed surgery on his elbow. Later he was treated by a

rheumatologist Dr. Caldwell. Both doctors, and several others, testi-
fied. Plaintiff argues that the full Commission should have given
greater weight to Dr. Caldwell's testimony or that Dr. Caldwell's testi-
mony should be more competent than Dr. Coonrad's testimony,
because Dr. Caldwell, a rheumatologist, has the most specific spe-
cialty regarding Plaintiff's eventual diagnosis of rheumatoid arthritis.

The full Commission determines credibility of witnesses, not this
Court. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 413-14
(1998). Therefore, it is the full Commission's decision whether to
afford a higher degree of credibility to the doctor or expert with the
"most advanced specialty." On appeal, this Court is limited to deter-
mining "whether *any competent evidence* supports the Commission's
findings of fact[.]" *Deese*, 352 N.C. at 116, 530 S.E.2d at 553 (emphasis
added). Therefore, even if this Court gave greater deference to the
doctor with the "most advanced specialty," Dr. Caldwell, the full
Commission still relied on testimony of doctors competent to testify,
meeting the "any competent evidence" standard. *See id.*