JOSEPH WITHERS, Employee-Plaintiff,
v.
SONOCO PRODUCTS, Employer, SELF-INSURED (GAB ROBBINS, Third-Party Administrator), Defendant.
No. COA07-150
Court of Appeals of North Carolina.
Filed December 18, 2007
This case not for publication
Cobourn & Saleeby, L.L.P., by Sean C. Cobourn, for plaintiff appellant.
Brook, Stevens & Pope, P.A., by Michael C. Sigmon and James A. Barnes IV, for defendant appellee.
McCULLOUGH, Judge.

FACTS
Plaintiff, an employee of Sonoco Products of Hickory, North Carolina (defendant-employer), worked as a baler operator. As part of his job, plaintiff placed cardboard on a conveyor belt and then packed the cardboard into bales. Plaintiff's job also included the cleaning of both the inside and outside of the Sonoco plant in Hickory ("plant").
Although plaintiff has presented conflicting accounts as to the details of his accident, his direct testimony before the Industrial Commission tended to show: On 27 March 2003, plaintiff was instructed to clean one of the hydraulic tanks at the plant. To perform this task, plaintiff climbed on top of the tank to blow off dust that had settled on the tank. Because there was no ladder to access the top of the tank, plaintiff used some nearby pipes to aid him in his climbing. After completing the cleaning, plaintiff began to climb down off the tank.
According to plaintiff, while climbing down his foot slipped off one of the pipes. To prevent himself from falling to the ground, plaintiff grabbed one of the nearby pipes with his left arm as his feet slipped. Although he was able to keep from falling to the ground, plaintiff claims he was left hanging from his left arm. The strain placed on his left arm from his fall caused plaintiff to feel as if he had "pulled a muscle" in his left shoulder. Plaintiff further testified that after the fall he informed Keith Denton, a Sonoco foreman and plaintiff's immediate supervisor, and Bobby Grimes, the plant manager, of his injury.
Over the next few weeks, plaintiff's left arm continued to hurt. During the second week after the accident, plaintiff's left arm and hand began to swell. In response to the pain and swelling, plaintiff again alerted Mr. Denton of the discomfort he was feeling in his arm.
On 15 April 2003, Mr. Grimes was informed by Mr. Denton that plaintiff reported having been hurt a few weeks before. Mr. Denton did not inform Mr. Grimes of plaintiff's injury earlier because Mr. Denton believed it to be only a minor injury. After learning ofplaintiff's injury, Mr. Grimes filled out a report, notified his supervisor, notified human resources, and notified the president of safety at Sonoco in Hartsville, South Carolina.
On 21 April 2003, plaintiff sought treatment for his injury at the emergency room of Catawba Valley Medical Center ("Medical Center"), where he was diagnosed with a possible strain. On 28 April 2003, plaintiff returned to the Medical Center to have his arm re-evaluated. Due to continuing problems with his left arm, the treating physician recommended plaintiff see another doctor. Subsequently, plaintiff visited Dr. Lucy Walker of Lake Hickory Family Care, who concurred with the diagnosis that plaintiff was likely suffering from a strain. However, when plaintiff's condition continued to deteriorate, Dr. Walker referred plaintiff to Dr. John Sarzier, a neurosurgeon. Dr. Sarzier ordered an MRI to be taken of plaintiff's shoulder and referred plaintiff to Dr. Robert Liljeberg, an orthopedic surgeon. Dr. Liljeberg examined plaintiff's shoulder and determined that the pain plaintiff was experiencing was likely coming from somewhere else.
On 8 December 2003, Dr. Sarzier performed multilevel fusion surgery on plaintiff in an effort to treat plaintiff's condition. Following the surgery, Dr. Sarzier prescribed physical therapy for plaintiff. Plaintiff never engaged in physical therapy, however, citing an inability to pay for it. Plaintiff last worked at Sonoco on 14 August 2003.
On 1 July 2003, plaintiff filed a notice to defendant-employer of the accident and a claim with the North Carolina Industrial commission ("Commission"). Defendant-employer denied plaintiff's claim and, on 28 August 2003, requested the case be assigned for a hearing. On 22 June 2004, the claim was heard before Deputy Commissioner Ronnie Rowell. On 4 February 2005, Deputy Commissioner Rowell filed an Opinion and Award determining that plaintiff had sustained an injury by accident during the course of his employment and that plaintiff was therefore entitled to medical treatment and ongoing temporary total disability benefits. Defendant appealed the award of Deputy Commissioner Rowell to the Full Commission. On 20 September 2005, the claim was heard before the Full Commission. On 13 October 2006, the Full Commission filed its Opinion and Award, reversing the decision of the Deputy Commissioner. On 24 October 2006, plaintiff filed a notice of appeal.

I.
Plaintiff argues the Full Commission erred in finding and concluding (1) that plaintiff did not sustain an injury by accident arising out of and in the course of employment, and (2) that plaintiff did not meet his burden of showing that his medical condition was causally related to his injury by accident. We disagree.
We have previously held "that our [Workers'] Compensation Act should be liberally construed to effectuate its purpose to provide compensation for injured employees or their dependents, and its benefits should not be denied by a technical, narrow, and strict construction."Hollman v. City of Raleigh, 273 N.C. 240, 252, 159 S.E.2d 874, 882 (1968). Under this Act, the Industrial Commission is the sole fact finding-body. See Brewer v. Trucking Co., 256 N.C. 175, 182, 123 S.E.2d 608, 613 (1962). Further, "[t]he Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." Anderson v. Construction Co., 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965). Thus, "[t]he findings of fact by the Industrial Commission are conclusive on appeal if supported by any competent evidence." Gallimore v. Marilyn's Shoes, 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977). It is not within the purview of this Court to weigh the evidence and decide the issue at bar based upon its weight. Anderson, 265 N.C. at 434, 144 S.E.2d at 274. "The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." Id.
Here, the Full Commission made comprehensive findings of fact that include:
3. Plaintiff filed a Form 18 on July 1, 2003, indicating that on March 27, 2003, as he was climbing off of a tank, he slipped and fell causing injury to his left shoulder and neck.
4. Defendant filed a Form 61 Denial on November 20, 2003, on the grounds that plaintiff had not suffered an injury by accident arising out of and in the course of his employment; and that there was no causal connection between plaintiff's condition and his employment.
5. Bobby Grimes, plant manager at the Hickory plant, completed a report of injury by plaintiff on April 15, 2003. The report indicates that plaintiff told Mr. Grimes that he had been hurt on one of the last Fridays in March, 2003, and that plaintiff indicated that [he] had told Mr. Grimes about the injury when it allegedly happened. Mr. Grimes noted in the report that this was not true. Mr. Grimes noted that he was in Alabama on Friday, March 21, 2003, and on Friday, March 28, 2003, plaintiff took a day of vacation. On April 17, 2003, plaintiff came to Mr. Grimes and indicated that he had been hurt on Thursday, March 27, 2003, and that he had initially had his dates mixed up.
6. Plaintiff reported to Mr. Grimes that his hand slipped off a pipe and all of his weight went to his other hand on another pipe. Mr. Grimes noted in the report that plaintiff told him that he was coming off the hydraulic tank and was about one foot off the ground when his hand slipped. Plaintiff did not tell Mr. Grimes that his foot slipped. The Form 19 notes that plaintiff stated that his hand slipped. Mr. Grimes noted in his report and also testified at the hearing, that he did not feel plaintiff had an accident. The report states that Mr. Grimes had fired plaintiff's cousin on April 14, 2003 and the very next day, this alleged accident surfaced. Based on the testimony and the demeanor of the witnesses, the undersigned find Mr. Grimes to be credible, and finds [sic] that plaintiff did not report the alleged incident to his employer March 27, 2003.
. . . .
12. Dr. Sarzier reviewed plaintiff's MRI dated June 5, 2003, noting that it showed fusion at C6-7 with significant stenosis and spondylosis from C4-5 to C5-6. Although Dr. Sarzier felt the findings on the MRI were significant, they did not coincide with an acute type of onset as one would expect based upon plaintiff's description of the injury. During his deposition, Dr. Sarzier testified that the type of stenosis plaintiff had tended to be more of an acquired or congenital condition over time. He wrote plaintiff out of work until June 19, 2003.
. . . .
17. Plaintiff was seen by Dr. Liljeberg in August and September 2003. To rule out alabral tear, Dr. Liljeberg ordered an arthrogram. The arthrogram showed an intact rotator cuff and anterior superior labrum appearance compatible with sublabral foramen. The changes on the arthrogram were chronic in nature and not acute. Dr. Liljeberg did not believe plaintiff would be improved with surgical intervention regarding his shoulder. Dr. Liljeberg testified that he did not find plaintiff's subjective complains [sic] of pain to be truthful or credible. Dr. Liljeberg testified that he did not think plaintiff sustained any injury to the shoulder during an incident on March 27, 2003. The undersigned find Dr. Liljeberg's testimony to be credible.
* * * *
19. On January 15, 2004, plaintiff presented to Dr. Sarzier complaining of left arm weakness. On exam, plaintiff had no evidence of atrophy of the arm and no sensory deficits. Dr. Sarzier stated he was "hard pressed to associate . . . the weakness that had continued, despite adequate decompression." Dr. Sarzier also opined that he was hard pressed to associate plaintiff's weakness with any specific event in view of no sensory deficits. Further, if plaintiff had true denervation, there would have been some atrophy of the arm. Plaintiff's subjective complaints were not consistent with the objective findings.
20. On March 18, 2004, plaintiff returned to Dr. Sarzier. An EMG/NCV study on March 8, 2004 revealed evidence of some possible denervation. Dr. Sarzier stated that the findings did not fit plaintiff's symptomatology. Dr. Sarzier recommended an MRI of the neck to prove or disprove any demyelinating issues that the studies pointed to, as well as further compression. There were no findings on the MRI consistent with the EMG nerve conduction study. Dr. Sarzier testified that the results of the MRI called into question the findings of the EMG nerve conduction study.
* * * *
22. The undersigned find that based on plaintiff's descriptions of the claim to the employer, in his recorded statement, at the hearing, and in various medical records, plaintiff has not given a consistent description of the alleged March 27, 2003 injury.
While the testimony is conflicting, the record contains competent evidence to support the findings of fact of the Full Commission. First, we note that plaintiff presented several different descriptions of how the alleged accident occurred. Second, although plaintiff claims he alerted Mr. Grimes of the accident the day it occurred, testimony proffered by Mr. Grimes suggested Mr. Grimes would not have been present on the day in question. Third, testimony by Dr. Liljeberg indicates plaintiff's problems were unlikely to be the result of the alleged accident. Thus, because there is some competent evidence in the record to support the Full Commission's findings of fact, we hold that they are conclusive upon appeal. We also determine that these findings of fact support the conclusions of law made by the Full Commission and the award entered.
Affirmed.
Judges CALABRIA and STEPHENS concur.
Report per Rule 30(e).