ELMORE, Judge.
 

 *792
 
 In this workers' compensation case, employer Goodyear Tire & Rubber Co. and carrier Liberty Mutual Ins. Co. (defendants), and employee Jennifer L. Haulcy (plaintiff), both appeal from an opinion and award of the North Carolina Industrial Commission, which awarded Haulcy retroactive workers' compensation benefits and awarded defendants a credit for disability payments paid to Haulcy under an employer-funded accident-and-sickness (A&S) disability plan during that time.
 

 In defendants' appeal, they assert the Commission's conclusion that Haulcy suffered a compensable injury in the form of a material aggravation of her pre-existing lower back condition while maneuvering a fifty-five
 
 *123
 
 pound tire during the course of her employment on 23 April 2014 was unsupported by competent evidence and its findings. In Haulcy's appeal, she asserts the Commission erred by awarding defendants the A&S credit because they failed to preserve the issue, and
 
 *793
 
 because the Commission's dispositive finding supporting its conclusion on the matter was unsupported by competent evidence.
 

 Because competent evidence supports the dispositive findings that support the challenged conclusions, we affirm the Commission's opinion and award in full.
 

 I. Background
 

 The Commission's opinion and award reveals the following facts. Jennifer Haulcy is forty-six years old and has worked with Goodyear Tire for the last eighteen years. During her employment there, Haulcy has worked as a tire sorter, a Banbury operator, and, since 2007, a paint machine operator.
 

 Paint machine operators work in pairs. When the paint machine is working properly, one operator removes tires from an elevated flatbed and places them onto an entrance conveyor, where the tires move under the paint machine to be sprayed with lubricant. When the lubricated tires exit the conveyor, the other operator puts the tires back onto the elevated flatbed, a process known as "throwing" tires. If a paint machine breaks down, the tires need to be manually lubricated. One operator picks up a tire, hangs it on a hook, spins the tire while brushing it with the lubricant, and then throws it back on the elevated flatbed. The other operator pushes the flatbed of tires to and from the lubricating area.
 

 On 19 March 2013, Haulcy injured her back while attempting to push a flatbed with a stuck wheel. She presented to the on-site medical clinic, was diagnosed with a low back strain, and was put on modified duty until 3 May, when she was released to return to full duty and prescribed to wear a back brace. Haulcy returned to work, continued to wear her back brace, and never filed a workers' compensation claim for that incident. Haulcy's medical records do not reveal she received any further treatment for her lower back after 3 May 2013.
 

 On 23 April 2014, Haulcy and her paint-machine-operator partner were manually lubricating larger tires that weighed approximately fifty-five pounds because their paint machine was inoperable. At that time, Haulcy was wearing her back brace, throwing the tires, and lubricating them, while her partner was pushing the flatbed of tires to and from the area. Around 8:00 a.m., Haulcy leaned back to throw a tire and felt pain in her lower back. She attempted to throw a few more tires but her back pain increased as she continued to twist her body to throw the tires onto the elevated flatbed. Haulcy asked her partner to change positions, and she started pushing the flatbed before determining she needed
 
 *794
 
 to present to the on-site medical facility for her back pain. MRIs later revealed,
 
 inter alia
 
 , a small disc herniation at L5-S1 and facet arthropathy at L4-L5, and Haulcy was diagnosed with multiple injuries to her lumbar spine. Haulcy started working modified duty on 24 April 2014.
 

 On 29 April 2014, Haulcy filed a Form 18 "Notice of Accident," alleging she sustained a back injury at work. On 27 May, defendants filed a Form 63 "Notice to Employee of Payment of Medical Benefits Only." In accordance with Goodyear Tire's 90-day modified-duty policy, Haulcy worked modified duty until that policy expired on 4 August, when Goodyear Tire prohibited her from working because she had neither been released to full duty work nor had she been assigned permanent restrictions to allow a job match. Starting 14 August 2014, Goodyear Tire paid Haulcy weekly disability payments from an employer-funded A&S disability plan.
 

 On 17 September, Haulcy filed a Form 33 "Request for Hearing" because defendants had failed to accept or deny her workers' compensation claim, and were directing her medical care but refused to pay workers' compensation benefits when she was out of work. On 27 February 2015, defendants filed a Form 61 "Denial of Workers' Compensation Claim." Following physical therapy, steroid injections, and radio frequency intervention for her lower back pain and symptoms, Haulcy eventually returned to work with Goodyear Tire on 4 November 2015, earning
 
 *124
 
 wages at or above her pre-April 2014 incident wages.
 

 After the hearing arising from Haulcy's Form 33, Deputy Commissioner Wanda Blanche Taylor entered an opinion and award on 29 December 2015. In her opinion and award, Deputy Commissioner Taylor concluded Haulcy sustained a compensable injury on 23 April 2014 and awarded her continuing weekly workers' compensation benefits, but did not address Haulcy having returned to work or the A&S disability payments she received during the period the deputy commissioner awarded her retroactive workers' compensation benefits. After defendants' motion to add evidence and to reconsider the deputy commissioner's opinion and award was denied, they appealed to the Commission.
 

 After a hearing, the Commission entered its opinion and award on 25 April 2017. The Commission concluded Haulcy sustained a compensable injury on 23 April 2014 and awarded her retroactive workers' compensation benefits from 5 August 2014 until 3 November 2015. It further concluded defendants were entitled to a $15,521.90 credit for the weekly A&S disability payments they furnished to Haulcy
 
 *795
 
 during that period and awarded defendants that credit. Both defendants and Haulcy appeal.
 

 II. Review Standard
 

 " 'In reviewing an opinion and award from the Industrial Commission, the appellate courts are bound by the Commission's findings of fact when supported by any competent evidence; but the [Commission's] legal conclusions are fully reviewable.' "
 
 Harrison v. Gemma Power Sys., LLC
 
 ,
 
 369 N.C. 572
 
 , 580,
 
 799 S.E.2d 855
 
 , 861 (2017) (quoting
 
 Lanning v. Fieldcrest-Cannon, Inc.
 
 ,
 
 352 N.C. 98
 
 , 106,
 
 530 S.E.2d 54
 
 , 60 (2000) ).
 

 III. Defendants' Appeal
 

 Defendants assert the Commission erred by concluding Haulcy sustained a compensable injury because (1) Haulcy "did not prove ... an actual 'injury' occurred," and (2) "the medical evidence concerning the causal link between [Haulcy's] incident and her employment ... is not competent to support a conclusion of causation."
 

 A. Challenged FOFs
 

 Defendants challenge the Commission's findings of fact (FOF) nos. 9, 11, 13, 14, 16, 17, 18, and 20, "as these findings detail [Haulcy's] complaints following her alleged injury at work." The challenged FOFs follow:
 

 9. Plaintiff received medical treatment at the on-site medical clinic following the April 23, 2014 incident. On May 7, 2014, Dr. Perez-Montes examined Plaintiff and assessed chronic, recurrent back pain, prescribed tramadol, and restricted Plaintiff to modified duty work. Plaintiff underwent lumbar and thoracic MRls without contrast on May 15, 2014. On May 28, 2014, Plaintiff underwent a thoracic MRI with contrast. Dr. Perez reviewed the MRIs and assessed multi-level degenerative facet arthropathy, a disc bulge with left nerve root encroachment at L5-S1, and thoracic myelomalacia with a small syrinx at T4-T5. Dr. Perez continued modified duty and referred Plaintiff to pain management.
 

 ....
 

 11. On August 6, 2014, Plaintiff presented to Dr. Larry Carson of FirstHealth Neurosurgery. Dr. Carson is board-certified in neurosurgery and plastic surgery. Plaintiff reported she was placing a tire onto a rack when she
 
 *796
 
 extended too far overhead and felt back pain. Plaintiff also reported her 2013 incident which required her to use a back brace. Plaintiff's symptoms were pain in the back and right leg and weakness in the right leg. Plaintiff's physical examination was consistent with the lumbar MRI findings and suggestive of an acute issue rather than a chronic issue. Dr. Carson assessed lumbar disc degeneration and felt Plaintiff's pain symptoms were emanating from her lumbar spine condition.
 

 ....
 

 13. On January 16, 2015, Plaintiff presented to Dr. Paul Singh of Carolina Spine Center. Dr. Singh is a board certified physiatrist. Plaintiff complained of low back pain radiating to her right anterior thigh to the knee. Dr. Singh noted Plaintiff had symptoms in 2013 that improved and she
 
 *125
 
 was able to return to work with the use of a back brace, but then exacerbated her condition on April 23, 2014. Dr. Singh reviewed the lumber MRI and interpreted it as revealing a small disc herniation at L5-S1 and facet arthropathy at L4-L5. Dr. Singh's opinion was that Plaintiff's symptoms were due to the facet arthropathy at L4-L5. He recommended Plaintiff "close out her case from a workman's comp perspective, and she can seek treatment for her facet joint pain that is largely arthritic in nature, not likely related to work related injury, and is largely exacerbated by her challenge with obesity."
 

 14. At his deposition, Dr. Singh was asked to confirm his opinion that Plaintiff[']s facet joint pain was not likely related to her April 23, 2014 injury. In response, Dr. Singh testified that Plaintiff has arthritic changes based upon the fact that she has worked for 18 years doing physically demanding jobs with Defendant-Employer. He further testified that given Plaintiff had an episode in 2013, received treatment and was able to return to work, her exacerbation in symptoms after putting a tire on top of a flatbed in April 2014 is probably related to the job. Dr. Singh further explained his reasoning in stating in his medical record that it was not work related was because he did not feel that Plaintiff would ever be able to return to her job and it would be best for her to settle her claim and obtain medical treatment under private health insurance.
 

 *797
 
 Ultimately, Dr. Singh again testified that, "when it comes down to it," when Plaintiff leaned back to place the tire on the top level of the flatbed, she performed an extension-type movement, which can exacerbate an underlying arthritic condition in a facet joint.
 

 ....
 

 16. The parties deposed Dr. Carson on June 1, 2015. After the August 6, 2014 evaluation, Plaintiff returned to Dr. Carson on April 13, 2015 and reported improvement in her pain following physical therapy, steroid injections, and radio frequency intervention. Dr. Carson recommended repeat electrodiagnostic testing, which was completed on May 29, 2015. Dr. Carson reviewed the results of the May 29, 2015 EMG and nerve conduction studies at his deposition, and testified that the results showed Plaintiff had a permanent irritation, but it was a less than complete study.
 

 17. Dr. Carson testified, to a reasonable degree of medical certainty, that Plaintiff aggravated her prior back injuries when she was lubricating and throwing tires on April 23, 2014 and that this incident, more likely than not, caused Plaintiff's back symptoms that he treated in August 2014 and April 2015. Dr. Carson's opinion was based upon Plaintiff's history, his physical examination findings, and the findings of the MRIs and electrodiagnostic studies. On cross-examination, Dr. Carson was questioned as to whether his opinion was solely based upon Plaintiff reporting that her back pain was worse following the April 23, 2014 incident than it was prior to the incident. In response, Dr. Carson reiterated his opinion was based on Plaintiff's history, including her report of the 2013 incident and her symptoms resulting from it, and his findings on examination, which indicated an acute problem rather than a chronic condition, were consistent with the mechanism of the April 23, 2014 incident, and were consistent with the results of the diagnostic studies.
 

 18. Based upon the preponderance of the credible evidence and competent expert opinions, Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment on April 23, 2014 and sustained an injury in the form of a material aggravation to her pre-existing low back condition as a result.
 

 *798
 
 ....
 

 20. The medical treatment Plaintiff has received for her low back condition since April 23, 2014, has been reasonably necessary to effect a cure, provide relief, or lessen Plaintiff[']s period of disability. Defendant paid for all Plaintiffs medical treatment received following the April 23, 2014 incident up until approximately May 2015.
 

 However, defendants have failed to specifically argue how any of these findings were unsupported by competent evidence. Rather,
 
 *126
 
 they argue the Commission's findings are insufficient because they are limited to "back pain" or "symptoms" caused by the April 2014 incident, not any particular "injury." Defendants cite to
 
 Jackson v. Fayetteville Area Sys. of Transp.
 
 ,
 
 78 N.C. App. 412
 
 ,
 
 337 S.E.2d 110
 
 (1985), to support their position that, because the Commission never made "a finding of an 'injury,' " its conclusion that Haulcy suffered a compensable injury was unsupported.
 

 In
 
 Jackson
 
 , we held the Commission's finding that an employee "experienced pain," standing alone, was insufficient to support a conclusion that the employee suffered a compensable injury, since "pain is not in and of itself a compensable injury."
 
 Id.
 
 at 414,
 
 337 S.E.2d at 111-12
 
 . Because "no specific finding was made that [the employee] sustained an injury or that determined the nature of that injury, if any," we reversed the opinion and award, and remanded for "specific findings of fact regarding the injury, if any, sustained by [the employee] and the nature of that injury."
 
 Id.
 
 at 414,
 
 337 S.E.2d at 112
 
 . Here, contrarily, in FOF no. 18 the Commission explicitly found Haulcy suffered a "compensable injury ... in the form of a material aggravation to her pre-existing low back condition." Accordingly,
 
 Jackson
 
 is inapplicable. Further, the Commission's finding of injury is supported by its FOF nos. 14 and 17, which are supported by competent evidence.
 

 As to FOF no. 14, when Dr. Singh was asked whether the April 2014 incident caused Haulcy's current medical condition, he replied: "The cause is multifactorial." He elaborated that Haulcy "probably had some arthritic changes relating to 18 years being in Goodyear, doing physical work, then she got an injury[,]" but "when it comes down to it, ... this particular [April 2014] incident, ... is a work-related injury, in my opinion." When asked why Dr. Singh's medical record indicated the April 2014 injury was not work-related, he explained he believed Haulcy's injury should be treated quickly and that she would be unable to return to her job, so he thought it best she close out her workers' compensation claim
 
 *799
 
 and receive necessary treatment through private insurance. Finally, Dr. Singh confirmed the "facet[ ] ... pain acceleration" Haulcy described when treating her was "a result of the [April 2014] incident" because the body mechanics involved in "putting a tire up" creates "an extension" of the lumbar spine, and such an "extension-type movement can exacerbate an underlying arthritic condition in a facet joint[.]" FOF no. 14 is therefore supported by competent evidence.
 

 As to FOF no. 17, Dr. Carson confirmed "within a reasonable degree of medical certainty" the April 2014 incident "was a materially exacerbating factor in the exacerbation of [Haulcy's] back pain" and "symptoms," and that incident "more likely than not" "cause[d] [Haulcy's] symptoms and back pain for which [he] treated her ...." Dr. Carson rejected the suggestion that his opinion was merely based on Haulcy's report that her lower back pain and symptoms worsened after the April 2014 incident and explained his opinion was based upon "the history provided, [his] physical examination, and the diagnostic studies available to [him] at the time." He confirmed that even if the Commission found Haulcy had persistent lower back pain from the 2013 March incident until the April 2014 incident, it would not "invalidate [his] opinion that there was an aggravation or acceleration of her pre-existing condition" and reiterated his diagnosis was "based on history confirmed by the physical exam and then supported by ... diagnostic tests." Finally, when asked "was there anything in the physical examination findings that gave [him] reason to believe ... [Haulcy's] back condition was related to a[n] acute trauma versus an active degenerative disc disease," Dr. Carson opined that "because [Haulcy] had decreased range of motion and tenderness, that suggested ... it was more acute ... than all-just chronic[.] ..." Accordingly, FOF no. 17 is supported by competent evidence.
 

 Because FOF nos. 14 and 17 support the portion of the Commission's FOF no. 18 that Haulcy sustained a compensable "injury" in the form of a "material aggravation to her pre-existing low back condition," we overrule this argument.
 

 B. Causation
 

 Defendants next assert the Commission's conclusion of compensability was unsupported
 
 *127
 
 because no competent evidence established the requisite causal link between the April 2014 incident and Haulcy's lower back injuries. They argue Drs. Singh's and Carson's expert opinions on medical causation were insufficient because they were based merely on the temporal relationship between the April 2014 incident and
 
 *800
 
 Haulcy's reported exacerbation of her back pain and symptoms. Thus, defendants continue, the doctors committed the logical fallacy of
 
 post hoc, ergo propter hoc
 
 -that is, confusing sequence with consequence. Defendants cite to
 
 Young v. Hickory Bus. Furniture
 
 ,
 
 353 N.C. 227
 
 ,
 
 538 S.E.2d 912
 
 (2000), for support.
 

 In
 
 Young
 
 , the only evidence linking an employee's fibromyalgia diagnosis to a work-related accident was an expert who testified he related the two " 'primarily because ... it was not there before and she developed it afterwards.
 
 And that's the only piece of information that relates the two
 
 .' "
 
 Id.
 
 at 232,
 
 538 S.E.2d at 916
 
 (emphasis added). Our Supreme Court determined that the expert's opinion was grounded upon "[t]he maxim '
 
 post hoc, ergo propter hoc
 
 ,' [which] denotes 'the fallacy of ... confusing sequence with consequence,' and assumes a false connection between causation and temporal sequence."
 

 Id.
 

 (quoting
 
 Black's Law Dictionary
 
 1186 (7th ed. 1999) ). After noting fibromyalgia is a diagnostically unidentifiable illness of unknown etiology,
 
 id.
 
 at 231,
 
 538 S.E.2d at 915
 
 , our Supreme Court held that "[i]n a case where the threshold question is the cause of a controversial medical condition, the maxim of '
 
 post hoc, ergo propter hoc
 
 ,' is not competent evidence of causation."
 
 Id.
 
 at 232,
 
 538 S.E.2d at 916
 
 .
 

 Here, contrarily, as defendants' concede, Dr. Carson explicitly rejected the suggestion his expert opinion on causation was based only on temporality, but reiterated it was grounded in his consideration of Haulcy's medical history, the reported incident, his physical exam, and the diagnostic evidence. Nor did Dr. Singh testify his causation opinion was based only on temporality. Rather, both doctors testified their opinions were based on other diagnostic evidence. Additionally, unlike the injury in
 
 Young
 
 , Haulcy's lower back injuries can be, and were, diagnostically identifiable. Further, the exacerbation of Haulcy's pre-existing lower back condition could be precisely identified based on diagnostic evidence, her medical history, her reported pain and symptoms, and the reported movements she made while throwing tires during the April 2014 incident, implicating the exact mechanism by which that incident may have exacerbated her pre-existing lower back condition. Accordingly,
 
 Young
 
 is inapplicable. Because competent evidence supported FOF nos. 14 and 17, which established the requisite causal link, we overrule this argument.
 

 In summary, because competent evidence supported the Commission's dispositive FOFs challenged on appeal, which in turn supported its challenged conclusion that Haulcy suffered a compensable
 
 *801
 
 injury on 23 April 2014, we affirm the Commission's opinion and award with respect to defendants' appeal.
 

 IV. Plaintiff's Appeal
 

 In her appeal, Haulcy asserts the Commission erred by awarding defendants a credit for $15,521.90 in weekly disability payments Goodyear Tire paid her through an employer-funded A&S disability plan. Under
 
 N.C. Gen. Stat. § 97-42
 
 (2017), the Commission may credit an employer for disability payments made to an employee under an employer-funded disability plan if it awards retroactive workers' compensation benefits during that period. Haulcy does not dispute that defendants would be eligible for a credit for disability benefits paid under a plan fully-funded by Goodyear Tire during the time she was eligible for workers' compensation benefits. She argues (1) the Commission lacked jurisdiction to award the A&S credit because defendants failed to preserve this issue, and (2) its finding that the disability plan was fully funded by Goodyear Tire was unsupported by competent evidence.
 

 A. Issue Preservation
 

 Haulcy first asserts the Commission lacked jurisdiction to award defendants the A&S credit because they failed to preserve this issue in their pretrial agreement to the deputy commissioner and again in their
 
 *128
 
 Form 44 "Application for Review" to the Commission. We disagree.
 

 On 29 April 2014, the parties entered into a pretrial agreement stipulating to facts and exhibits to be used by the deputy commissioner in deciding whether Haulcy suffered a compensable injury and, if so, what benefits she is due. In the pretrial agreement, defendants argued Haulcy did not sustain a compensable injury but requested, alternatively, that if she did, the deputy commissioner determine "what benefits [she is] entitled." The deputy commissioner's opinion and award demonstrates she considered "Stipulated Exhibit 2," which included "Goodyear Accident & Sickness Payment Information," but she never addressed the A&S credit issue in her opinion and award. On 13 January 2016, defendants filed a "Motion to Add Evidence and Reconsider Opinion & Award," explicitly moving,
 
 inter alia
 
 , for the Commission to revise the deputy commissioner's opinion and award "to document ... an A&S credit in the amount set forth in [the] Stipulated Exhibit[.]"
 

 On 14 January 2016, Haulcy filed a response to defendants' motion in which she,
 
 inter alia
 
 , acknowledged the stipulated "Goodyear Accident and Sickness Payment Information" exhibit and argued "defendants failed to properly preserve the issue of a credit[,]" but "nevertheless
 
 *802
 
 [agreed to] abide by the [Commission's] discretion" as to the A&S credit. After the deputy commissioner denied the motion on 1 February 2016, defendants filed a Form 44 to appeal to the Commission. While defendants never specifically claimed entitlement to the A&S credit in their Form 44, they did challenge the deputy commissioner's award of benefits.
 

 Even if defendants failed to preserve this issue, the Commission has "the duty and responsibility to decide all matters in controversy between the parties."
 
 Joyner v. Rocky Mount Mills
 
 ,
 
 92 N.C. App. 478
 
 , 482,
 
 374 S.E.2d 610
 
 , 613 (1988). Haulcy's argument that defendants waived this issue by failing to specifically raise it in the pretrial agreement fails because in reviewing a deputy commissioner's opinion and award, the Commission has the "power ..., if proper, to amend the award,"
 
 Brewer v. Powers Trucking Co.
 
 ,
 
 256 N.C. 175
 
 , 182,
 
 123 S.E.2d 608
 
 , 613 (1962), even based on an issue not presented to the deputy commissioner.
 
 See, e.g.
 
 ,
 
 Penegar v. United Parcel Serv.
 
 , --- N.C. App. ----, ---- - ----,
 
 815 S.E.2d 391
 
 , 400-01,
 
 2018 WL 2011869
 
 (May 1, 2018) (No. 17-404) (rejecting a similar argument that the Commission lacked jurisdiction to amend an aspect of a deputy commissioner's opinion and award based on an issue not raised by either party). Haulcy's argument that defendants waived this issue by failing to raise it in their Form 44 to the Commission also fails.
 

 Although Rule 701 of the Workers' Compensation Rules of the North Carolina Industrial Commission contemplates that a Form 44 "shall state the grounds for ... review .... with particularity" and that "[g]rounds for review not set forth in the Form 44 ... are deemed abandoned," our Supreme Court has explained these "rules do not limit the power of the Commission to review[ or] modify ... the findings of fact found by a Deputy Commissioner ...."
 
 Brewer
 
 ,
 
 256 N.C. at 182
 
 ,
 
 123 S.E.2d at 613
 
 . Accordingly, the Commission had jurisdiction to amend the deputy commissioner's opinion and award by making findings on the A&S credit issue and adjudicating the matter even if it were not adequately presented.
 
 See
 

 Penegar
 
 , --- N.C. App. at ----,
 
 815 S.E.2d at 401
 
 , ("[T]he Commission was well within its authority and therefore had jurisdiction to amend an aspect of the Deputy Commissioner's opinion and award, even those not raised by either party on appeal."). Accordingly, we overrule this argument.
 

 B. A&S Credit
 

 Haulcy argues, alternatively, that even if the A&S credit issue was preserved, the Commission erred by awarding the credit because its dispositive finding, FOF no. 24, was unsupported by competent evidence. We disagree.
 

 *803
 
 In challenged FOF no. 24, the Commission found in relevant part:
 

 24. Beginning August 14, 2014, Plaintiff began receiving weekly disability payments from an accident and sickness disability
 
 *129
 
 plan provided by Defendant-Employer. As of April 12, 2015, Plaintiff had received $15,521.90 through the Defendant-Employer-funded plan.
 

 Based on this finding, the Commission concluded:
 

 6.... Defendants are entitled to a credit for the employer-funded accident and sickness disability benefits received by Plaintiff beginning August 11, 2014 for any weeks in which Plaintiff is entitled to indemnity compensation pursuant to the below award of the Commission. ...
 

 Here, in defendants' 13 January 2016 motion to revise the deputy commissioner's opinion and award, they sought a credit for the A&S disability benefits paid to Haulcy because the program was "fully funded by Employer-Defendant" and "[s]uch credit is established through numerous Opinions & Award of the Commission in relation to Goodyear's A&S program." The A&S records, labeled "Goodyear Accident and Sickness Payment Information," were included as an exhibit on appeal. That exhibit establishes the A&S records were generated from "Human Resource Management Systems," lists "A&S / SWC Benefit Records from 4/14/14 to present," and details forty-one payments to "employee Haulcy, Jennifer L" for periods beginning 11 August 2014 and ending 12 April 2015, totaling $15,521.90. (Original in all caps.) Accordingly, competent evidence supported the Commission's FOF no. 24, which in turn supported its COL no. 6. We therefore overrule this argument.
 

 V. Conclusion
 

 As to defendants' appeal, competent evidence supported the Commission's dispositive FOFs, which supported its conclusion Haulcy suffered a compensable injury on 23 April 2014 and its award of workers' compensation benefits. As to Haulcy's appeal, the Commission properly addressed and adjudicated the A&S credit issue, and competent evidence supported the dispositive FOF, which supported its conclusion defendants were entitled to the A&S credit and its award of that credit. Therefore, we affirm the Commission's 25 April 2017 opinion and award in full.
 

 AFFIRMED.
 

 Judges HUNTER, JR. and DIETZ concur.