GLORIA COOPER, Employee, Plaintiff v. BHT ENTERPRISES, Employer, Self-Insured, and KEY RISK MANAGEMENT SERVICES, Servicing Agent, Defendants

No. COA08-711

(Filed 17 February 2009)

**1. Workers' Compensation— appeal from deputy commissioner—Form 44 not filed—discretion to waive**

The Industrial Commission in a workers' compensation case did not err by hearing an appeal from a deputy commissioner where defendants did not file a Form 44. Both a Court of Appeals opinion and the plain language of the Industrial Commission's rules have recognized the Commission's discretion to waive the required Form 44 filing where the appealing party has stated its grounds for appeal with particularity in a brief or other document filed with the Commission.

**2. Workers' Compensation— back injury—subsequent neck condition—timing of complaints to medical providers—finding**

There was competent evidence in a workers' compensation case to support the Industrial Commission's finding that plaintiff did not begin to make regular complaints of neck pain to her medical providers until more than six months after the injury, and that there was insufficient evidence to support a finding that a report of isolated neck pain was proximately related to her later treatment for a cervical disc herniation.

**3. Workers' Compensation— back injury—subsequent cervical condition—causation—medical testimony—post hoc, ergo propter hoc**

There was competent evidence in a workers' compensation case arising from a back injury and a later cervical condition to support the Industrial Commission's determination that the testimony of two doctors could not support a finding that the neck condition was causally related to the work-related fall. Where the

COOPER v. BHT ENTERS.

[195 N.C. App. 363 (2009)]

question is the cause of a controversial medical condition, the confusion of sequence with consequence (post hoc, ergo propter hoc) is not competent evidence of causation.

### 4. Workers' Compensation— disability—only through date of release

The Industrial Commission did not err by concluding that a workers' compensation plaintiff was entitled to disability compensation only through the date she was released to return to full duty work. There was no presumption of disability in this case, the doctor who issued medical excuse notes could not cite any objective medical reason to keep plaintiff from returning to work with respect to her compensable back injury, and plaintiff offered only the absence of light duty work with her employer in the month after the injury to prove that she had made a "reasonable" effort to obtain work.

Appeal by plaintiff from Opinion and Award entered 13 February 2007 and order entered 25 March 2008 by the North Carolina Industrial Commission. Heard in the Court of Appeals 1 December 2008.

*Morrison Law Firm, P.L.L.C., by B. Perry Morrison, Jr., Thomas & Farris, P.A., by Albert S. Thomas, Jr., and Rose, Rand Attorneys, by Paul N. Blake, III, for plaintiff-appellant.*

*Cranfill, Sumner & Hartzog LLP, by J. Gregory Newton, and Meredith Taylor Berard, for defendants-appellees.*

MARTIN, Chief Judge.

Plaintiff Gloria Cooper appeals from an Opinion and Award by the North Carolina Industrial Commission ("Commission"), which limited the benefits awarded to her by the deputy commissioner's Opinion and Award, and from an order denying her motions to amend and reconsider the Full Commission's Opinion and Award. We affirm.

The parties stipulated that an employment relationship existed between plaintiff and defendant-employer BHT Enterprises at the time of the 7 March 2003 accident, and that plaintiff "suffered a compensable injury by accident involving her lower back arising out of and in the course of her employment" with defendant-employer. The Full Commission's unchallenged and, therefore, binding findings of fact, *see Johnson v. Herbie's Place*, 157 N.C. App. 168, 180, 579 S.E.2d

COOPER v. BHT ENTERS.

[195 N.C. App. 363 (2009)]

110, 118 (concluding that, where a party failed to assign error to the Industrial Commission's findings of fact, those findings are "presumed to be supported by competent evidence" and are, thus, "conclusively established on appeal"), *disc. review denied*, 357 N.C. 460, 585 S.E.2d 760 (2003), are as follows:

1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 47 year-old female with a high school education.

2. At the time of her admittedly compensable low back injury on March 7, 2003, plaintiff had worked for defendant for approximately 14 years as a meat cook in a McDonald's restaurant.

3. Prior to March 7, 2003, plaintiff did not have any health problems that prevented her from working.

4. While at work on March 7, 2003, plaintiff entered a walk-in freezer to shelve some bagels. While exiting the freezer, plaintiff slipped on some ice and fell to the floor.

5. Plaintiff continued to work immediately following the accident, but presented to Nash Urgent Care with complaints of lower back pain later the same day. Plaintiff did not complain of or report any cervical or neck symptoms. X-rays of plaintiff's lumbar and thoracic spine were negative. Plaintiff was released to return to light-duty work; however, defendant informed plaintiff that no light-duty work was available.

. . . .

7. On April 14, 2003, plaintiff presented to Dr. Grieg McAvoy for an orthopaedic evaluation. Dr. McAvoy interpreted x-rays of plaintiff's thoracic and lumbar spine to be within normal limits. Dr. McAvoy diagnosed plaintiff with low back pain with no signs of nerve deficits or nerve irritation, recommended a home exercise program, and released plaintiff to return to regular duty work without restrictions.

8. Plaintiff delivered a full duty release note to defendant, however she did not return to work due to her belief that she was unable to work. Larry Thomas Winbourne, director of operations for defendant, testified that he was aware of plaintiff's April 14, 2003 full-duty release by Dr. McAvoy. He testified that plaintiff's position was held open for her, and that defendant was "hoping she's come back to work." Mr.

Winbourne further testified that plaintiff was considered to be on "medical leave" and was "never terminated."

9. On June 16, 2003, plaintiff returned to Dr. McAvoy for re-evaluation. At this visit, she complained of both lower back and neck pain[, the description of which was recorded in Dr. McAvoy's medical notes as "a catch in her neck"]. Dr. McAvoy ordered another lumbar MRI but did not order a cervical MRI. The lumbar MRI was performed on July 3, 2003 and revealed slight osteoarthritic changes but no disc extrusion or stenosis. On the basis of this MRI, Dr. McAvoy, on July 3, 2003, deemed plaintiff to have reached maximum medical improvement, assigned a permanent partial disability rating of 0% to plaintiff's back, and advised plaintiff to "continue with normal activities without restrictions."

10. Plaintiff began overlapping treatment with her primary care physician, Dr. Samuel Wesonga, at the Boice-Willis Clinic on April 24, 2003. Plaintiff initially reported only lower back pain to Dr. Wesonga, and made no mention of cervical or neck pain. It was not until September 24, 2003, over six months after the March 7, 2003 injury by accident that plaintiff reported both lower back/extremity pain and neck/shoulder pain to Dr. Wesonga.

11. Dr. Wesonga ordered a cervical MRI for the first time since plaintiff's accident at work. The MRI revealed disc herniations superimposed on severe circumferential spinal stenosis at C5-C6 and C6-C7. As a result, Dr. Wesonga referred plaintiff for neurosurgical evaluation.

12. On December 16, 2003, plaintiff presented to Dr. Lucas J. Martinez, a neurosurgeon at Rocky Mount Neurosurgical and Spine Consultants. Dr. Martinez diagnosed plaintiff with herniated disks in the neck at C6-C7 on the left and C5-C6 on the right.

13. On February 5, 2004, Dr. Martinez performed cervical surgery that consisted of an anterior cervical microdiscectomy and anterior interbody fusion at C6-C7.

14. Following her surgery, plaintiff continued to treat with Dr. Martinez, including a regimen of physical therapy from which she was discharged on August 12, 2004. Plaintiff last saw Dr. Martinez on August 25, 2004, but continued to treat with Dr.

Wesonga for chronic pain as of the date of hearing before the Deputy Commissioner.

The Commission also found that plaintiff "failed to show disability beyond her release to return to work on April 14, 2003." Plaintiff did not challenge this finding.

After receiving evidence, the deputy commissioner filed an Opinion and Award on 9 May 2006, which concluded that plaintiff was entitled to (1) "total disability compensation at the [stipulated] rate of $111.96 per week *from March 8, 2003 and continuing until plaintiff returns to work or until further order of the Commission,*" and (2) "payment of medical expenses incurred or to be incurred as a result of her *compensable upper and lower back conditions* as may reasonably be required to effect a cure, provide relief, or lessen the period of disability." (Emphasis added.) Defendant-employer and its third-party administrator Key Risk Management Services (collectively "defendants") appealed to the Full Commission on 11 May 2006. On 13 February 2007, the Full Commission entered an Opinion and Award affirming in part, and reversing in part, the deputy commissioner's decision. The Full Commission concluded that plaintiff was entitled to (1) "total disability compensation at the [stipulated] rate of $111.96 per week *from March 8, 2003, through April 14, 2003, the date she was released to return to full-duty work,*" and (2) "payment of medical expenses incurred or to be incurred *[only]* as a result of her *low back condition* as may reasonably be required to effect a cure, provide relief, or lessen the period of disability." (Emphasis added.) Plaintiff filed a Motion to Amend the Opinion and Award pursuant to Rule 59 of the North Carolina Rules of Civil Procedure, and a Motion to Reconsider the Opinion and Award pursuant to Workers' Compensation Rule 701, both dated 22 February 2007, on the grounds that "the evidence before the Commission [wa]s insufficient to justify its decision." On 9 March 2007, defendants filed Responses to Plaintiff's Motion to Amend and Motion to Reconsider. On 25 March 2008, the Full Commission denied plaintiff's motions, finding that "plaintiff has not shown good grounds for the Full Commission to amend, reconsider, or make additional findings in this matter." Plaintiff appealed to this Court from the Commission's 13 February 2007 Opinion and Award and its 25 March 2008 order denying her motions.

[1] We first address plaintiff's contention that the Commission erred by hearing defendants' appeal from the deputy commissioner's

Opinion and Award. Plaintiff asserts that defendants failed to file a Form 44 pursuant to Workers' Compensation Rule 701(2), which defendants do not dispute. Although defendants properly filed a brief with the Commission after giving notice of their appeal, as also required by Rule 701(2), plaintiff argues that defendants' mere failure to file a Form 44 constitutes an abandonment of defendants' grounds for appeal to the Full Commission. We disagree.

Workers' Compensation Rule 701(2) of the North Carolina Industrial Commission provides that, after giving sufficient notice of appeal to the Full Commission, an appellant must complete a Form 44 Application for Review, which is supplied by the Commission, stating the grounds for its appeal "with particularity." Workers' Comp. R. of N.C. Indus. Comm'n 701(2), 2009 Ann. R. (N.C.) 1006. The appellant must then file and serve the completed Form 44 and an accompanying brief within the specified time limitations "unless the Industrial Commission, in its discretion, waives the use of the Form 44." *See id.*

Like defendants in the present case, in *Roberts v. Wal-Mart Stores, Inc.*, 173 N.C. App. 740, 619 S.E.2d 907 (2005), the plaintiff did not file a Form 44 after giving notice of her appeal to the Full Commission. *See id.* at 742, 619 S.E.2d at 909. However, unlike defendants in the present case, the *Roberts* plaintiff also failed to file a brief or "any other document with the Full Commission setting forth grounds for appeal with particularity." *See id.* at 744, 619 S.E.2d at 910. While we recognized then, as we do now, that the Commission may waive the use of Form 44, we also recognized that Rule 701(2) "specifically requires that grounds for appeal be set forth with particularity." *See id.* (internal quotation marks omitted). Accordingly, in *Roberts*, we concluded that "the portion of Rule 701 requiring appellant to state with particularity the grounds for appeal may not be waived by the Full Commission . . . [because, w]ithout notice of the grounds for appeal, an appellee has no notice of what will be addressed by the Full Commission." *Id.* Thus, because the *Roberts* plaintiff failed to state her appeal *with particularity*, we held that the Commission committed reversible error by issuing an Opinion and Award based "solely on the record." *See id.*

However, unlike the appealing plaintiff in *Roberts*, defendants in the present case complied with Rule 701(2)'s requirement to state the grounds for appeal with particularity by timely filing their brief after giving notice of their appeal to the Full Commission. Additionally, plaintiff does not argue that she did not have adequate notice of

defendants' grounds for appeal. Plaintiff asserts only that defendants' failure to file a Form 44 should have been deemed an abandonment of defendants' appeal. Since both this Court and the plain language of the Industrial Commission's rules have recognized the Commission's discretion to waive the filing requirement of an appellant's Form 44 where the appealing party has stated its grounds for appeal with particularity in a brief or other document filed with the Full Commission, we overrule these assignments of error.

---

"The Industrial Commission and the appellate courts have distinct responsibilities when reviewing workers' compensation claims." *Billings v. General Parts, Inc.*, 187 N.C. App. 580, 584, 654 S.E.2d 254, 257 (2007) (citing *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 114, 530 S.E.2d 549, 552 (2000)), *disc. review denied*, 362 N.C. 175, 659 S.E.2d 435 (2008). The Industrial Commission is " 'the fact finding body,' " *Adams v. AVX Corp.*, 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (quoting *Brewer v. Powers Trucking Co.*, 256 N.C. 175, 182, 123 S.E.2d 608, 613 (1962)), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999), and is " 'the sole judge of the credibility of the witnesses and the weight to be given their testimony.' " *Id.* (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965)). "This being true, [the Commission] may accept or reject the testimony of a witness, either in whole or in part, depending solely upon whether it believes or disbelieves the same." *Anderson v. Northwestern Motor Co.*, 233 N.C. 372, 376, 64 S.E.2d 265, 268 (1951).

This Court, on the other hand, " 'does not have the right to weigh the evidence and decide the issue on the basis of its weight.' " *Adams*, 349 N.C. at 681, 509 S.E.2d at 414 (quoting *Anderson*, 265 N.C. at 434, 144 S.E.2d at 274); *see also Rewis v. New York Life Ins. Co.*, 226 N.C. 325, 330, 38 S.E.2d 97, 100 (1946) ("The courts are not at liberty to reweigh the evidence and to set aside the findings of the Commission, simply because other inferences could have been drawn and different conclusions might have been reached.").

Instead, "appellate courts must examine 'whether any competent evidence supports the Commission's findings of fact and whether [those] findings . . . support the Commission's conclusions of law.' " *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 700 (2004) (alteration and omission in original) (quoting *Deese*, 352 N.C. at 116, 530 S.E.2d at 553). If the findings of fact are supported by competent evidence, those findings are conclusive on appeal " 'even though there be evidence that would support findings to the con-

trary.' " *See Adams,* 349 N.C. at 681, 509 S.E.2d at 414 (quoting *Jones v. Myrtle Desk Co.,* 264 N.C. 401, 402, 141 S.E.2d 632, 633 (1965)). While we recognize that "[t]he evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence," *id.* (citing *Doggett v. South Atl. Warehouse Co.,* 212 N.C. 599, 194 S.E. 111 (1937)), this Court's " 'duty goes no further than to determine whether the record contains any evidence tending to support the finding[s made by the Industrial Commission].' " *Id.* (quoting *Anderson,* 265 N.C. at 434, 144 S.E.2d at 274).

## I.

Plaintiff first contends there was no competent evidence to support the Commission's Findings of Fact 6, 15, 16, or 17, and contends these findings do not support its conclusion that plaintiff "failed to show that her cervical back condition[—i.e., her neck problem—] was proximately caused by the March 7, 2003 injury by accident." Plaintiff argues that the Commission erroneously "disregarded" the stipulated medical records, plaintiff's own testimony, and the expert medical testimony. We disagree.

## A.

**[2]** In its Finding of Fact 6, the Commission found that "[p]laintiff continued to treat with Nash Urgent Care for lower back pain on March 12, 17 and 27, 2003[, but] . . . did not complain of or report any cervical or neck symptoms during these visits." It also found that, at her 2 April 2003 appointment, plaintiff "reported lower back pain, with pain radiating into her upper back and neck, and was referred for an orthopaedic evaluation." "This visit was the first that plaintiff reported any neck pain, and plaintiff did not report any neck pain to any of her medical providers until September 24, 2003, over six months after the March 7, 2003 injury by accident."

Plaintiff asserts that the Commission erred in making this finding since the reason her low back pain was her "chief complaint" was not because she had no neck pain during those six months, but simply because she chose to "consistently focus[ only] on what hurt the *most*" at each of her medical visits. Plaintiff also testified that, when she complained of "back pain," she meant that her entire back was hurting, including her neck. However, since "[t]he Commission is not required to accept the testimony of a witness, even if the testimony is

uncontradicted," *see Hassell v. Onslow County Bd. of Educ.*, 362 N.C. 299, 307, 661 S.E.2d 709, 715 (2008), and is " 'the sole judge of the credibility of the witnesses and the weight to be given their testimony,' " *see Adams*, 349 N.C. at 680, 509 S.E.2d at 413 (quoting *Anderson*, 265 N.C. at 433-34, 144 S.E.2d at 274), we cannot conclude that the Commission erred when it did not find plaintiff's testimony as fact.

Plaintiff next asserts that the Commission erred in making this finding because plaintiff claims that she *did* complain of neck pain at medical visits prior to her 24 September 2003 visit with Dr. Wesonga. In support of this assertion, plaintiff directs this Court's attention to the stipulated medical records from 16 June 2003, where she states that she complained to Dr. McAvoy of her ongoing neck pain. However, the chart notation from 16 June reflects only that plaintiff complained of symptoms that the treating physician recorded as, simply, "a catch in her neck." As further support that she regularly complained of neck pain prior to 24 September, plaintiff attempts to rely on a 9 May 2003 chart notation, which indicated that "[s]he does have some mild increased pain with full forward flexion and hyperextension." However, a careful reading of the 9 May chart note in its entirety shows that plaintiff presented at this visit only "for evaluation of her low back and left lower extremity pain," and that the excerpted phrase was made in relation to both plaintiff's neck *and* back.

After a thorough review of the stipulated medical records, the only evidence that plaintiff complained of neck pain prior to 24 September 2003—other than the 2 April 2003 visit, recognized but dismissed by the Commission as an "isolated instance of neck pain" in this challenged finding of fact—is the 16 June reference to her complaint of "a catch in her neck." Instead, our review found that the references to plaintiff's neck in the medical records prior to 24 September—for example, on 30 April 2003, 3 May 2003, 5 May 2003, and 1 July 2003—did not show any complaints from plaintiff regarding ongoing pain, but rather only reflected post-examination assessments by plaintiff's health care providers, who determined that her neck had "[n]o muscle stiffness," and was "non-tender" with painless range of movement, "supple," and "[s]oft, supple" with "[n]o lymphadenopathy."

Therefore, we conclude that there was competent evidence to support the Commission's finding that plaintiff did not begin to make regular complaints of neck pain to her medical providers until 24

September 2003, "over six months after the March 7, 2003 injury by accident," and that there was "insufficient evidence" to support a finding that plaintiff's report of an "isolated instance of neck pain" on 2 April 2003 "was proximately related to her later treatment for cervical disc herniation by Dr. Martinez."

B.

[3] "In evaluating the causation issue, this Court can do no more than examine the record to determine whether any competent evidence exists to support the Commission's findings as to causation . . . ." *Peagler v. Tyson Foods, Inc.*, 138 N.C. App. 593, 598, 532 S.E.2d 207, 210 (2000) (omission in original) (internal quotation marks omitted). "[W]hen conflicting evidence is presented, the Commission's finding of causal connection between the accident and the disability is conclusive [and binding on the reviewing court]." *Id.* (first alteration in original) (internal quotation marks omitted).

However, "[i]n a case where the threshold question is the cause of a controversial medical condition, the maxim of *'post hoc, ergo propter hoc,'* is not competent evidence of causation." *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 232, 538 S.E.2d 912, 916 (2000). "The maxim *'post hoc, ergo propter hoc,'* denotes 'the fallacy of . . . confusing sequence with consequence,' and assumes a false connection between causation and temporal sequence." *Id.* (omission in original) (quoting *Black's Law Dictionary* 1186 (7th ed. 1999)). "As such, this Court has treated the maxim as inconclusive as to proximate cause." *Id.*

In its Findings of Fact 15, 16, and 17, the Commission found that Drs. Wesonga and Martinez believed there was a causal link between plaintiff's cervical condition and her 7 March 2003 work-related fall. However, it further found that Dr. Wesonga "expressly conceded that the sole basis for his causation opinion with respect to plaintiff's neck condition was the mere temporal proximity of her symptoms to the fall," and that Dr. Martinez "also based his causation opinion on the temporal proximity of plaintiff's symptoms to the fall." As a result, it found that, "[b]ased upon the greater weight of the competent medical evidence of record, . . . plaintiff failed to show that her cervical back condition [wa]s causally related to her accident at work on March 7, 2003."

Our review of the record reveals that Dr. Wesonga initially testified that it was his opinion within a reasonable degree of medical cer-

COOPER v. BHT ENTERS.

[195 N.C. App. 363 (2009)]

tainty that plaintiff's neck problem was related to her fall on 7 March 2003. He testified, "It's not unusual for folks to be involved in an injury and not have any symptoms in one part of the body, and then later on develop symptoms down the road," and that "you could make a very reasonable assumption that, you know, if somebody's injured they may be focused in on one part of their body and not pay attention to the rest of their body." However, Dr. Wesonga also testified that, if plaintiff had not developed any cervical symptoms until six months after her fall, he could not say to any reasonable degree of medical certainty that plaintiff's fall "more than likely caused her cervical problem." He further testified:

Q. And you can't say with any degree of medical certainty that her fall at work on March 7th, 2003 calls for [sic] a cervical condition?

A. Yes, you can. Yes, you can. I mean, she again from the fact that she never had a problem before and now she has a problem cause and effect look as though it's an issue of a time—time frame, you know.

Q. Okay. So your opinion is based simply on the fact that she didn't have these problems before and that sometime afterward, even if it's six months afterwards she developed these problems. That's the basis for your opinion?

A. Exactly.

Similarly, Dr. Martinez initially testified that it was his opinion within a reasonable degree of medical certainty that plaintiff's neck problem was caused by her work-related fall. However, he later testified that, "[i]f it is true" that plaintiff did not have any cervical symptoms until six months after her fall, it "would be correct" that he could not state that her condition was related to that fall within a reasonable degree of medical certainty.

Since we have already concluded that there was competent evidence to support the Commission's finding that plaintiff did not report having ongoing neck pain during the six months following her work-related fall, we must also conclude that there was competent evidence to support the Commission's determination that the testimony of Drs. Wesonga and Martinez could not support a finding, within a reasonable degree of medical certainty, that plaintiff's cervical back condition was causally related to her work-related fall. Therefore, we hold that the Commission correctly determined that

COOPER v. BHT ENTERS.

[195 N.C. App. 363 (2009)]

plaintiff "failed to'show" that her cervical back condition was proximately caused by her work-related fall. Accordingly, these assignments of error are overruled.

## II.

Plaintiff next contends the Commission erred by concluding as a matter of law that she "failed to show" that she was entitled to compensation for medical expenses incurred as a result of her cervical back condition.

"For an injury to be compensable under the terms of the Workmen's Compensation Act, it must be proximately caused by an accident arising out of and suffered in the course of employment." *Click v. Pilot Freight Carriers, Inc.*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). Therefore, our decision to affirm the Commission's conclusion that plaintiff failed to show that her cervical back condition was proximately caused by her 7 March 2003 work-related fall renders it unnecessary to address this assignment of error.

## III.

[4] Finally, plaintiff contends the Commission erred when it concluded that she was entitled to disability compensation only through 14 April 2003, which was the date she was "released to return to full-duty work." Plaintiff argues that she presented sufficient evidence to satisfy her burden of proving her continuing disability under *Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 425 S.E.2d 454 (1993), and claims that she is entitled to continuing temporary total disability compensation.

" 'Disability,' within the North Carolina Workers' Compensation Act, means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." *Clark v. Wal-Mart*, 360 N.C. 41, 43, 619 S.E.2d 491, 493 (2005) (internal quotation marks omitted); *see also Cross v. Falk Integrated Tech., Inc.*, 190 N.C. App. 274, 278-79, 661 S.E.2d 249, 255 (2008) (" 'Disability' is defined by a diminished capacity to earn wages, not by physical impairment."). "In order to obtain compensation under the Workers' Compensation Act, the claimant has the burden of proving the existence of h[er] disability and its extent." *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 185, 345 S.E.2d 374, 378 (1986). To prove her disability, the claimant has the burden of proving that, after her work-related injury, she was incapable of earning the same wages she had earned before her injury in either

the same or any other employment, and that her incapacity to earn was caused by her compensable injury. *See Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). Unless the claimant is entitled to a presumption of disability in her favor based on one of three limited circumstances, *see Johnson v. Southern Tire Sales & Serv.*, 358 N.C. 701, 706, 599 S.E.2d 508, 512 (2004), the claimant may meet the burden of proving her disability in one of four ways:

(1) the production of medical evidence that [s]he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment,

(2) the production of evidence that [s]he is capable of some work, but that [s]he has, after a reasonable effort on [her] part, been unsuccessful in [her] effort to obtain employment,

(3) the production of evidence that [s]he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment, or

(4) the production of evidence that [s]he has obtained other employment at a wage less than that earned prior to the injury.

*Russell*, 108 N.C. App. at 765, 425 S.E.2d at 457 (citations omitted). It is only after the claimant has met this initial burden of proving her disability that the burden will then shift to a defendant who claims that the claimant-employee is capable of earning wages. *See Kennedy v. Duke Univ. Med. Ctr.*, 101 N.C. App. 24, 32-33, 398 S.E.2d 677, 682 (1990). If a defendant makes such a claim, then that defendant "must come forward with evidence to show not only that suitable jobs are available, but also that the [claimant-employee] is capable of getting one, taking into account both physical and vocational limitations." *See id.* at 33, 398 S.E.2d 682.

In the present case, "[s]ince there was neither a previous award of continuing disability nor a Form 21 or Form 26 agreement, plaintiff could not rely upon a presumption of disability and was required to meet [her] burden of proof under *Russell*." *See Ramsey v. Southern Indus. Constructors Inc.*, 178 N.C. App. 25, 42, 630 S.E.2d 681, 692, *disc. review denied*, 361 N.C. 168, 639 S.E.2d 652 (2006). Plaintiff appears to contend that she has satisfied her burden to establish her disability under either of *Russell's* first or second methods of proof. We disagree.

COOPER v. BHT ENTERS.

[195 N.C. App. 363 (2009)]

In support of her contention that she was still "incapable of work in any employment" after 14 April 2003, *see Russell*, 108 N.C. App. at 765, 425 S.E.2d at 457, plaintiff directs this Court's attention to two medical excuse notes signed by Dr. Wesonga and one note signed by Dr. Wesonga's physician's assistant, which state that plaintiff was unable to work on 30 April, 1 May, 2 May, 5 May, and 1 July 2003 due to her "current medical problems" and "low back pain injury." Plaintiff also refers to Dr. Wesonga's testimony in which he stated that, as of the date of his deposition on 12 May 2005, he had still not returned plaintiff to work.

However, a further review of Dr. Wesonga's testimony shows that, aside from plaintiff's complaints of some pain, Dr. Wesonga could not cite any objective medical reason to keep plaintiff from returning to work with respect to her compensable back injury:

Q. And would it be fair to say that when you were examining [plaintiff] from the April 24, 2003—December 24, 2003—that was respect [sic] to her back, her physical examinations were objectively normal?

A. Yes.

Q. So basically the only thing you had to go on were [plaintiff's] subjective complaints with respect to her back?

A. Yes.

Q. You couldn't—you couldn't corroborate or verify her subjective complaints with any objective findings?

A. Correct.

Q. So when you were—when you did take [plaintiff] out of work during that period of time that was based completely on her subjective complaints?

A. Yes.

Q. There were no objective findings to keep her out of work; is that correct?

A. Correct.

This testimony is consistent with the Commission's unchallenged finding that, at her 14 April 2003 visit with Dr. McAvoy at the Rocky Mount Orthopaedics & Sports Medicine Center, "Dr. McAvoy diagnosed plaintiff with low back pain with no signs of nerve deficits or

COOPER v. BHT ENTERS.

[195 N.C. App. 363 (2009)]

nerve irritation, recommended a home exercise program, and released plaintiff to return to regular duty work without restrictions." As plaintiff offered no other medical evidence in support of her assertion that she was "incapable of work in any employment" after 14 April 2003 as a result of her work-related injury, we conclude that plaintiff failed to meet her burden of proving her disability under the first method in *Russell.*

Plaintiff seems to alternatively argue that she has proven her continuing disability under the *Russell* second method of proof, *see Russell*, 108 N.C. App. at 765, 425 S.E.2d at 457, offering testimony that she was capable of sòme work but that, in the month that followed her injury, on the several occasions she sought light duty work with her employer, she was told there was none available. However, plaintiff offered no other evidence to prove that she made a "reasonable" effort to obtain employment. As the record contains no indication that plaintiff made any other attempts to obtain employment, we cannot conclude that she proved her disability under the second prong of *Russell. Cf. Perkins v. U.S. Airways*, 177 N.C. App. 205, 214, 628 S.E.2d 402, 408 (2006) ("Ms. Perkins alternatively argues that because she contacted U.S. Airways about a light duty position and they did not offer her one, the Commission erred by not concluding she was disabled under the second option [of *Russell*] . . . . Ms. Perkins cites to no authority—and we know of none—that would have required U.S. Airways to offer Ms. Perkins such a position. The record contains no indication that Ms. Perkins made any other attempts to obtain employment. The Commission was free to decide, as it did, that Ms. Perkins' single contact with U.S. Airways was insufficient to establish she had made a reasonable effort to obtain employment under the second *Russell* option."), *disc. review denied*, 361 N.C. 356, 644 S.E.2d 231 (2007).

Therefore, we conclude that plaintiff has failed to prove that she was disabled after Dr. McAvoy released her to full-duty work on 14 April 2003. Accordingly, we hold that the Commission correctly concluded that plaintiff was entitled to disability compensation only until 14 April 2003, and affirm the Commission's Opinion and Award and its order denying plaintiff's motions to amend and reconsider its Opinion and Award.

Affirmed.

Judges WYNN and STEPHENS concur.