IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-290

No. COA21-356

Filed 3 May 2022

I.C. Nos. 13-762104, 15-730144

ROBIN KLUTTZ-ELLISON, Employee, Plaintiff,

v.

NOAH'S PLAYLOFT PRESCHOOL, Employer, and ERIE INSURANCE GROUP, Carrier, Defendants.

Appeal by Defendants from Opinion and Award entered 11 March 2021 by the North Carolina Industrial Commission. Heard in the Court of Appeals 25 January 2022.

*Shelby, Pethel & Hudson, P.A., by David A. Shelby, for Plaintiff-Appellee.*

*Hedrick Gardner Kincheloe & Garofalo, PLLC, by M. Duane Jones and Lindsay N. Wikle, for Defendant-Appellants.*

JACKSON, Judge.

¶ 1 Noah's Playloft Preschool ("Defendant Noah's Playloft") and Erie Insurance Group ("Defendant Erie") (collectively "Defendants") appeal an Opinion and Award by the North Carolina Industrial Commission. After careful review, we affirm.

## I. Background

¶ 2 This worker's compensation case involves one claimant, Robin Kluttz-Ellison ("Plaintiff"), who filed two separate claims following two different workplace

accidents. The claims were eventually consolidated for hearing.

**5 August 2013 Accident**

¶ 3        Plaintiff is the owner and director of Noah's Playloft Preschool, Inc. in Salisbury, North Carolina. In 2010, Plaintiff underwent a total right knee replacement performed by Dr. William Furr. On 5 August 2013, Plaintiff sustained an injury to her left and right knees and left shoulder after falling off a ladder while changing a lightbulb at the preschool. Plaintiff claimed workers' compensation benefits for injuries to her upper left extremity, both knees, both hips, and her neck. Defendants accepted Plaintiff's claim for her left knee injury but denied the compensability of the injuries Plaintiff claimed for her left shoulder and right knee. Defendants did, however, consent to pay for a one-time evaluation of Plaintiff's right knee by Dr. Marcus P. Cook, an orthopedic surgeon.

¶ 4        The disputed claims came on for a full evidentiary hearing before Deputy Commissioner David Mark Hullender on 6 June 2016. Deputy Commissioner Hullender entered an Opinion and Award on 12 December 2016. Based on the testimony of Dr. Furr, who evaluated Plaintiff after the work accident, Deputy Commissioner Hullender found in part that "Dr. Furr opined that there may be some slight loosening of the hardware in Plaintiff's right knee." Deputy Commissioner Hullender concluded that "Plaintiff sustained a material aggravation of her pre-existing right knee condition and left shoulder condition . . . ." Deputy Commissioner

Hullender awarded Plaintiff future medical treatment "including, but not limited to, evaluation by [orthopedic surgeon Dr. James Comadoll] for her right knee and left arm issues, possible revision of right knee arthroplasty and further physical therapy to effect a cure or give relief to Plaintiff's right knee and left shoulder pursuant to N.C. Gen. Stat. § 97-25 and § 97-25.1." Defendants subsequently provided Plaintiff with an evaluation by Dr. Comadoll's office on 7 February 2017.

**15 May 2015 Accident**

On 15 May 2015, Plaintiff tripped and fell over a child's sleeping cot, landing on her knees, and hitting her arm on a wooden cubby while working at the preschool. Plaintiff filed for workers' compensation benefits listing injuries to her right elbow, hand, and lower arm as well as both knees. On 22 March 2016, Plaintiff filed a second claim related to the 15 May 2015 accident, listing injuries to "her left lower arm, elbow, hand and any other injuries causally related." On 2 May 2017, Defendants denied Plaintiff's claim for benefits deriving from carpal tunnel syndrome in her left hand as being unrelated to the 5 August 2013 accident. On 16 June 2017, Defendants filed a second form denying Plaintiff's claim for left carpal tunnel issues as being unrelated to the 15 May 2015 accident.

**Consolidation of Claims**

On 25 August 2017, Plaintiff requested that her claim for injuries to her left lower arm, elbow, hand, and other causally related injuries stemming from the 15

May 2015 accident be assigning for hearing. On 13 September 2017, Plaintiff requested that her claim for injuries to her left shoulder, both knees, hip, and neck stemming from the 5 August 2013 accident be assigned for hearing, claiming that Defendants had failed to authorize medical treatment recommended by Plaintiff's authorized treating physician. The claims were consolidated for hearing and the matter came on for a full evidentiary hearing before Deputy Commissioner Jesse M. Tillman on 27 April 2018.

¶ 7      At the hearing, Plaintiff testified about the injuries she sustained from the accidents on 5 August 2013 and 15 May 2015 as well as the symptoms she was currently experiencing. Plaintiff also testified that she had tried to lose weight using various diets and methods in the past but had been unsuccessful. Following the hearing, Plaintiff submitted expert witness testimony via deposition of orthopedic surgeon Dr. Thomas Ginn, primary care provider Dr. Ronnie Barrier, bariatric surgeon Dr. Eric Mallico, orthopedic surgeon Dr. William Furr, and orthopedic surgeon Dr. James Comadoll. The record closed on 19 October 2018.

¶ 8      Deputy Commissioner Tillman entered an Opinion and Award on 24 January 2019. Deputy Commissioner Tillman concluded that Plaintiff had not proven that the loosening of hardware in her right knee and therefore the need for revision surgery was caused by the 5 August 2013 and/or the 15 May 2015 accidents. Deputy Commissioner Tillman thus also concluded that Plaintiff's need for bariatric surgery

was not causally related to the workplace injuries and denied her claim for medical compensation in the form of weight loss management. On 1 February 2019, Plaintiff appealed to the Full Commission and a hearing was scheduled for 11 June 2019.

¶ 9 On 29 May 2019, Plaintiff underwent right knee surgery performed by orthopedic surgeon Dr. John Masonis. On 10 June 2019, Plaintiff filed a Motion to Submit Additional Evidence to the Full Commission. The Commission continued the hearing to 1 August 2019 and held Plaintiff's motion in abeyance to allow Plaintiff to obtain Dr. Masonis's surgical notes. On 9 July 2019, Plaintiff filed a Motion to Submit Additional Evidence/Motion to Allow Additional Depositions, requesting Plaintiff be allowed to take the deposition of Dr. Masonis and re-take the deposition of Dr. Comadoll. The Commission held this motion in abeyance as well and allowed the parties to be heard at oral argument on 1 August 2019. The Commission granted Plaintiff's motions on 17 September 2019 and the parties conducted a second deposition of Dr. Comadoll on 17 October 2019. Plaintiff also submitted the medical records from her right knee surgery.

¶ 10 On 7 December 2020, the Commission entered an Opinion and Award. The Commission concluded that Plaintiff's right knee condition and resulting medical treatment was compensable and awarded payment for the 29 May 2019 right knee surgery. The Commission concluded that Plaintiff had failed to establish that her need for weight loss treatment was directly related to the 5 August 2013 compensable

injury and denied her claim for bariatric surgery.

¶ 11 On 22 December 2020, Plaintiff filed a Motion for Reconsideration and a Motion to Allow Additional Evidence, contending that while the Commission found the emergent requirement for Plaintiff's weight loss was her need for revision of her right knee replacement, the Commission incorrectly concluded that her weight loss treatment was not directly related to her 5 August 2013 compensable injury. Plaintiff also requested that medical records from her gastric bypass surgery, which was performed on 5 November 2018, be admitted. On 29 December 2020, Defendants filed a response, arguing the Opinion and Award should not be amended and Plaintiff could have sought admission of the medical records when the record was reopened by the Commission on 17 September 2019.

¶ 12 On 11 March 2021, without admitting additional evidence, the Commission entered an Amended Opinion and Award, concluding that bariatric surgery was medically necessary for Plaintiff to undergo right knee surgery and awarding Plaintiff payment of medical expenses related to her gastric bypass surgery.

¶ 13 Defendants entered timely notice of appeal on 25 March 2021.

## II. Analysis

¶ 14 Defendants' appeal is limited to the Full Commission's award of medical treatment for Plaintiff's right knee and bariatric surgeries.

### A. Motions to Add Additional Evidence

KLUTTZ-ELLISON V. NOAH'S PLAYLOFT PRESCHOOL

2022-NCCOA-290

*Opinion of the Court*

Defendants argue first that the Commission erred in granting Plaintiff's 10 June 2019 and 9 July 2019 motions to add additional evidence because Plaintiff never provided the necessary good grounds.

"Under our Workers' Compensation Act, 'the Commission is the fact finding body.'" *Adams v. AVX Corp.*, 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (quoting *Brewer v. Powers Trucking Co.*, 256 N.C. 175, 182, 123, S.E.2d 608, 613 (1962)). Accordingly, "[t]he Commission has plenary power to receive additional evidence," *Cummins v. BCCI Constr. Enters.*, 149 N.C. App. 180, 183, 560 S.E.2d 369, 371 (2002), "[i]f application is made to the Commission within 15 days from the date when notice of award shall have been given . . . and, if good ground[s] be shown therefor[,]" N.C. Gen. Stat. § 97-85(a) (2021). "[W]hether 'good ground[s] be shown therefore' in any particular case is a matter within the sound discretion of the Commission, and the Commission's determination in that regard will not be reviewed on appeal absent a showing of manifest abuse of discretion." *Lynch v. M. B. Kahn Constr. Co.*, 41 N.C. App. 127, 131, 254 S.E.2d 236, 238 (1979). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

To determine whether the Commission abused its discretion in finding that good grounds existed "to reopen the record for receipt of additional evidence in the form of Plaintiff's medical records regarding her May 29, 2019 revision of her right

total knee arthroplasty and deposition testimonies from Dr. Masonis and Dr. Comadoll[,]" we examine the reasons proffered by Plaintiff in her motions to allow additional evidence.

¶ 18      When appealing Deputy Commissioner Tillman's 24 January 2019 Opinion and Award to the Full Commission, Plaintiff appealed Deputy Commissioner Tillman's conclusion that she had failed to prove that the loosening of the hardware in her right knee and the related need for right knee surgery was caused by the 5 August 2013 accident. This conclusion was based in part on Deputy Commissioner Tillman's Finding of Fact 42:

> 42. Dr. Comadoll explained that trauma characteristically would not cause Plaintiff's hardware to loosen. Typically, bone fracture would occur with trauma that causes the loosening of arthroplasty hardware. There is no evidence of bone fracture.

¶ 19      Plaintiff had yet to undergo the right knee surgery performed by Dr. Masonis when Deputy Commissioner Tillman closed the record on 19 October 2018. Accordingly, Plaintiff asserted the following in her 10 June 2019 Motion to Allow Additional Evidence:

> 6.      Upon information and belief intra-operative findings made by Dr. Masonis at the time of Plaintiff's revision surgery may have direct implications on the issue of whether Plaintiff's August 5, 2013 injury by accident caused the loosening of Plaintiff's hardware.
>
> 7.      Specifically, Dr. Comadoll testified, as the basis for

> Findings of Fact 42 and 43 that "bone fracture would occur with trauma that causes loosening of arthroplasty hardware." Plaintiff upon information and belief, asserts Dr. Masonis' intraoperative findings may have a direct bearing on whether fractures existed.

¶ 20 In her second motion for additional evidence, filed 9 July 2019, Plaintiff also asserted:

> 4. Plaintiff believes that the necessity for the total knee revision surgery was caused or aggravated by her August 5, 2013 fall at work.
>
> 5. Dr. James Comadoll, who treated Plaintiff for her knee problems prior to Dr. Masonis, has reviewed Plaintiff's recent medical records and has signed an affidavit in reference to that review. Based upon said affidavit, Plaintiff believes Dr. Comadoll's testimony will be materially different based upon the findings and records of Dr. Masonis.

¶ 21 Defendants argue that "no new evidence was produced to justify reopening the evidentiary record" because Dr. Comadoll testified in his second deposition that Dr. Masonis's surgical notes indicated there was no fracturing of Plaintiff's bone, as Dr. Comadoll expected. Even if, as Defendants contend, the additional evidence was not relied upon by Dr. Comadoll in the specific way that Plaintiff suggested it would be in her motions, that does not negate the existence of good grounds to allow Plaintiff to submit the medical records of her right knee surgery and re-depose Dr. Comadoll. Our review of the Commission's ruling does not occur in retrospect, but rather examines the Commission's prospective reasoning for reopening the record. Given

the unavailability of Dr. Masonis's surgical notes prior to Deputy Commissioner Tillman issuing an Opinion and Award on 24 January 2019, Plaintiff showed the necessary good grounds to submit additional evidence to the Commission and the Commission's decision to admit the additional evidence was not manifestly unsupported by reason.

¶ 22    Defendants also argue that Plaintiff essentially used Dr. Comadoll's second deposition to "offer[] a new legal theory of out whole cloth, and ask[] Dr. Comadoll to opine on that theory." More particularly, Defendants label Plaintiff's argument that her 5 August 2013 work accident materially aggravated the pre-existing condition in Plaintiff's right knee as the new legal theory. Defendants contend they had no notice of this argument until Plaintiff filed her supplemental brief within 30 days of Dr. Comadoll's deposition as allowed by the Commission's 17 September 2019 order.[1] Defendants argue that Plaintiff did not assert this theory in her motions or properly preserve it in her Form 44 Application for Review to the Commission.

¶ 23    Rule 701 of the North Carolina Industrial Commission directs that "appellant shall submit a Form 44 Application for Review stating with particularity all assignments of error and grounds for review . . . ." 11 N.C. Admin. Code 23A.0701(d) (2021). "Grounds for review and assignments of error not set forth in the Form 44

---

[1] The briefs and supplemental briefs submitted by the parties to the Full Commission do not appear in the Record on Appeal.

Application for Review are deemed abandoned, and argument thereon shall not be heard before the Full Commission." *Id.* Typically, our Court has held this rule was violated where the appellant failed to submit a Form 44 or to set forth the grounds for appeal with particularity in another document such as a brief, but the Commission nevertheless issued an Opinion and Award. *See Roberts v. Wal-Mart Stores, Inc.*, 173 N.C. App. 740, 744, 619 S.E.2d 907, 910 (2005); *Cooper v. BHT Enters.*, 195 N.C. App. 363, 368-69, 672 S.E.2d 748, 753-54 (2009).

¶ 24      In her Form 44, Plaintiff alleges

> 4.      Specifically, Deputy Commissioner Tillman's Finding of Fact Number 35 finding that "The December 12, 2016 Opinion and Award does not conclude that if there is hardware loosening, it was the direct result of the August 5, 2013 incident . . ." is error and contrary to Deputy Hullender's Opinion and Award. Plaintiff contends it was error for Deputy Commissioner Tillman not to find the issue of whether plaintiff's hardware was loose, and that loosening was caused by plaintiff's August 5, 2013 accident was precluded from determination by him and barred from his consideration by *res judicata.*

Deputy Commissioner Tillman's Finding of Fact 35 stated:

> 35.      Deputy Commissioner Hullender, in his December 12, 2016 Opinion and Award, found as fact that Dr. Furr stated that he was fearful that Plaintiff suffered some type of trauma around her right knee prosthetic installed before Plaintiff's workplace accident of August 5, 2013 which could have resulted in the loosening of the hardware within the prostheses. The December 12, 2016 Opinion and Award does not conclude that if there is hardware loosening, it was a direct result of the August 5, 2013

incident and refers Plaintiff for further evaluation and treatment of her right knee at the direction of Dr. Comadoll, pursuant to N.C. Gen. Stat. § 97-25[.]

In the 12 December 2016 Opinion and Award, Deputy Commissioner Hullender made several findings about the testimony of Dr. Furr, the orthopedic surgeon who performed Plaintiff's original right knee replacement and evaluated Plaintiff in 2013 and 2014 after her work accident. These findings included the following:

> 40. Dr. Furr stated that in Plaintiff's case he was fearful that she had some type of trauma around her prosthesis, particularly on the tibial component, and the bone scan shows signs of loosening.
>
> 41. Dr. Furr stated that several factors are looked at when determining whether there has been some trauma or *aggravation of a prosthetic by a fall* including bone scans, conditions before and after the reported fall, and other diagnostic testing. Based on all of these factors, Dr. Furr opined that Plaintiff injured both of her knees when she fell off the ladder on August 5, 2013. Dr. Furr further opined that when Plaintiff fell, she may have received some type of trauma to the tibia which was enough to cause some loosening.
>
> . . .
>
> 44. Dr. Furr opined that Plaintiff had "some type of manipulation where there was a twisting or manipulation of the knee itself and make a contusion" and the "injury resulted in her having continuous symptomology to the point where ten months later a bone scan showed some loosening." While Dr. Furr cannot tell whether the loosening is getting better or worse, he opined that "the manipulation or injury itself from *the fall is what initiated,*

*aggressed, or aggravated* this to occur."

(Emphasis added.)  Deputy Commissioner Hullender subsequently concluded that: "The preponderance of the competent, credible evidence in the record established that Plaintiff did sustain a material aggravation of her right knee and left shoulder as a result of the August 5, 2013 accident."

¶ 26        Although Plaintiff did not use the words "material aggravation" in her Form 44, we conclude that she satisfied her obligation to state with particularity the assignments of error and grounds for review.  Deputy Commissioner Hullender's conclusion that Plaintiff had sustained a material aggravation of her right knee was rooted in his findings regarding Dr. Furr's testimony, which indicated there was loosening and "the fall is what . . . aggravated this to occur."  Plaintiff stated in her Form 44 "that loosening was caused by plaintiff's August 5, 2013 accident was precluded from determination by [Deputy Commissioner Tillman.]"  This statement is sufficient to put Defendants on notice of the material aggravation theory, especially considering the clear reference to Deputy Commissioner Hullender's Opinion and Award and given the findings contained therein.

¶ 27        Furthermore, in Plaintiff's 9 July 2019 Motion to Submit Additional Evidence and to Allow Additional Depositions, Plaintiff stated her belief "that the necessity for the total knee revision surgery was caused or *aggravated* by her August 5, 2013 fall at work."  (Emphasis added.)  This statement would have noticed the material

aggravation theory to Defendants prior to the Full Commission hearing on 1 August 2019.

¶ 28    For these reasons, we hold that the Full Commission did not abuse its discretion in allowing Plaintiff's motions to submit additional evidence in the form of medical records from Plaintiff's right knee surgery and Dr. Comadoll's second deposition.

**B. Right Knee Surgery**

¶ 29    Defendants argue next that the Commission erred by concluding that they failed to rebut the *Parsons* presumption in relation to Plaintiff's right knee surgery and by awarding Plaintiff payment for the cost of her right knee surgery. Defendants challenge Findings of Fact 29, 30, and 31 as being unsupported by competent evidence.

¶ 30    In a workers' compensation appeal, "[t]he reviewing court's inquiry is limited to two issues: whether the Commission's findings of fact are supported by competent evidence and whether the Commission's conclusions of law are justified by its findings of fact." *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 186, 345 S.E.2d 374, 379 (1986). "The Commission's findings of fact are conclusive on appeal when supported by such competent evidence, even though there is evidence that would support findings to the contrary." *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 700 (2004) (internal marks and citation omitted). "Thus, on appeal, an appellate

court does not have the right to weigh the evidence and decide the issues on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 115, 530 S.E.2d 549, 552 (2000) (internal marks and citation omitted). "The Commission's conclusions of law are reviewed *de novo*." *McRae*, 358 N.C. at 496, 597 S.E.2d at 701.

¶ 31        A workers' compensation claimant has the initial burden of proving the compensability of an injury—"of showing that the injury complained of resulted from the accident." *Snead v. Sandhurst Mills, Inc.*, 8 N.C. App. 447, 451, 174 S.E.2d 699, 702 (1970). After satisfying this burden, the claimant is entitled to a presumption that any further medical treatment for the "very injury the Commission has previously determined to be the result of a compensable accident" is directly related to that compensable injury. *Parsons v. Pantry, Inc.*, 126 N.C. App. 540, 542, 485 S.E.2d 867, 869 (1997). The claimant is not required to prove causation again to receive compensation for treatment; rather, the defendant-employer must rebut the *Parsons* presumption by proving "the original finding of compensable injury is unrelated to [the] present discomfort." *Id.* "The employer may rebut the presumption with evidence that the medical treatment is not directly related to the compensable injury." *Perez v. Am. Airlines/AMR Corp.*, 174 N.C. App. 128, 135, 620 S.E.2d 288, 292 (2005). This evidence can include "expert testimony or affirmative medical

evidence[.]" *Id.* at 137, 620 S.E.2d at 293.

Defendants contend that the testimony given by Dr. Comadoll in his first deposition was enough to rebut the *Parsons* presumption "that the work injury was not related to the need for surgery[.]"

In his first deposition, Dr. Comadoll offered the following relevant testimony:

> [Plaintiff's Counsel:] Okay. Now . . . after your PA saw Ms. Kluttz-Ellison, did you, at some point, see Ms. Kluttz-Ellison?
>
> [Dr. Comadoll:] Yes.
>
> [Plaintiff's Counsel:] And did you make a determination as to whether or not her right knee hardware was loose?
>
> [Dr. Comadoll:] Yeah. Her -- her -- the part on the shin bone radiographically looked loose, at the minimum.
>
> [Plaintiff's Counsel:] In your opinion, does Plaintiff have loose hardware in her right total knee?
>
> [Dr. Comadoll:] Yes.
>
> . . .
>
> [Defendants' Counsel:] Okay. So the factors in Ms. Ellison's case that the [sic] most likely caused her hardware in her right knee to loosen are possibly how the alignment was when the -- when the hardware was initially put in, and the fact of her weight?
>
> [Dr. Comadoll:] Yes, ma'am.
>
> [Defendants' Counsel:] Do you have any reason to believe that the August 5th, 2013 incident caused her hardware to loosen?

[Dr. Comadoll:]  No.

. . .

Plaintiff, on the other hand, argues that Defendants "ignore[d] Dr. Comadoll's testimony that the 5 August 2013 fall from the ladder materially aggravated Plaintiff's loose right knee hardware[.]"

In his second deposition, Dr. Comadoll offered the following relevant testimony:

> [Plaintiff's Counsel:]  All right.  So, if I understand your testimony, your testimony is not that the trauma caused the loosening of the hardware; is that right?
>
> [Dr. Comadoll:]  Correct.
>
> [Plaintiff's Counsel:]  But materially aggravated it?
>
> [Dr. Comadoll:]  Correct.
>
> [Plaintiff's Counsel:]   After re-reviewing Dr. Masonis' records today, is that still your opinion?
>
> [Dr. Comadoll:]  Yes, sir.
>
> [Plaintiff's Counsel:]  And do you hold that opinion to a reasonable degree of medical probability or certainty?
>
> [Dr. Comadoll:]  Yes, sir.
>
> [Plaintiff's Counsel:]  Is that opinion based on your review of Ms. Kluttz-Ellison's medical records, your own examinations and medical records, her diagnostic testing?
>
> [Dr. Comadoll:]  The x-rays.
>
> [Plaintiff's Counsel:]  X-rays.

[Dr. Comadoll:]  Once it -- once it breaks free, it is going to continue to move --

[Plaintiff's Counsel:]  Right.

[Dr. Comadoll:]  -- and continue to shift.  And once it takes on load, it's going to exponentially shift.

[Plaintiff's Counsel:]  And would a fall from five or six feet off a ladder be the type of trauma that would aggravate that loosening?

[Dr. Comadoll:]  Yes, sir.

[Plaintiff's Counsel:]  And, in your opinion, based on the description of the accident and the opinion and award that you just read, would that have materially aggravated her loosening such that it required revision of her knee?

[Dr. Comadoll:]  It could, yes.

[Plaintiff's Counsel:]  All right.  And is that more likely than not, in fact, what happened in Ms. Kluttz-Ellison's case?

[Dr. Comadoll:]  I don't know.

[Plaintiff's Counsel:]  Okay.

[Dr. Comadoll:]  If -- and you can correct me if I'm -- if she had a loose tibia, which she did, it will continue to erode the bone and she will necessitate a revision of her knee, no matter what.  It was just a matter if [sic] timing.

[Plaintiff's Counsel:]  Right.

[Dr. Comadoll:]  Now, if you ask me did the fall potentiate that and shorten that timeline, the answer is yes.

¶ 36     If we view the above evidence in a light to favor Defendants, we could describe

the testimony Dr. Comadoll gave in his first and second depositions as contrarian: that Dr. Comadoll first concluded the work accident *did not* cause the hardware to loosen and then later concluded the work accident *did* cause the hardware to loosen in the form of a material aggravation. If we view the evidence in a light to favor Plaintiff, we could describe the testimony Dr. Comadoll gave in his second deposition as a clarification of his first deposition: that the work accident did not *cause* Plaintiff's right knee hardware to loosen, rather it only accelerated the loosening of the hardware through a material aggravation of the prosthesis. Ultimately, the *Parsons* presumption is intended to serve as a benefit to plaintiffs and not a burden, but regardless of how we treat the differences in Dr. Comadoll's deposition testimony, this issue is resolved by the fact the *Parsons* presumption applies to the material aggravation theory of compensability for Plaintiff's right knee injury. *See Parsons*, 126 N.C. App. at 542, 485 S.E.2d at 869 (asserting that requiring a plaintiff to reprove causation "is unjust and violates our duty to interpret the Act in favor of injured employees").

¶ 37    In its Conclusion of Law 4, the Commission stated that "Plaintiff's right knee injury was determined to be compensable by Deputy Commissioner Hullender's December 12, 2016 Opinion and Award. As neither party appealed the award, it is conclusive and binding." Deputy Commissioner Hullender concluded the injury was compensable because "Plaintiff sustained a material aggravation of her pre-existing

right knee condition . . . ." The *Parsons* presumption therefore applied to Plaintiff's right knee injury and gave Plaintiff the benefit of a presumption that the requested medical treatment for her right knee was necessitated by her 5 August 2013 work accident. Defendants thus had to produce evidence that the medical treatment Plaintiff sought—the total revision of her right knee replacement—was not directly related to the material aggravation of Plaintiff's right knee that resulted from the 5 August 2013 work accident.

¶ 38 In examining the whole of Dr. Comadoll's first and second deposition testimony, Defendants have not presented any expert witness testimony or other affirmative medical evidence that the 5 August 2013 accident did not materially aggravate Plaintiff's pre-existing right knee condition. Dr. Comadoll's testimony in his first deposition that the work accident did not cause the loosening does not refute or counter his testimony that the work accident materially aggravated the loosening and accelerated the need for surgery. Defendants failed to produce evidence that the work accident did not result in a material aggravation of Plaintiff's right knee. Accordingly, Defendants failed to overcome the *Parsons* presumption that applied to Plaintiff's right knee injury.

¶ 39 Based on Dr. Comadoll's first and second deposition testimony, there was at least some competent evidence to support Findings of Fact 29, 30, and 31. Those findings in turn support the Commission's conclusions of law that Plaintiff's need for

right knee surgery was related to her 5 August 2013 work accident. Accordingly, we hold that the Full Commission did not err in awarding Plaintiff compensation for the treatment of her right knee injury, namely for the cost of her 29 May 2019 revision right total knee arthroplasty.

**C. Bariatric Surgery**

¶ 40    Defendants lastly argue that the Commission erred in awarding compensation for Plaintiff's bariatric surgery because it is not directly related to Plaintiff's compensable injury. Specifically, Defendants challenge Conclusion of Law 8 as being unsupported by Findings of Fact 23 and 24.

¶ 41    Here, the Commission's relevant findings are as follows:

> 23.    Dr. Comadoll referred Plaintiff to Eric John Mallico, M.D., a board-certified surgeon who focuses his practice on laparoscopic surgery. Dr. Mallico testified that it is very typical and a part of protocol to not allow a patient to undergo knee joint replacement surgery until the BMI of a patient is below 40. Because of Plaintiff's attempts at weight loss, her partial success in losing weight and the tremendous amount of weight she needs to lose, it is Dr. Mallico's opinion that the only way for her to be successful in reducing her weight to achieve a BMI below 40 is to undergo bariatric surgery.
>
> 24.    Ronnie Barrier, M.D., Plaintiff's primary care medical provider, an expert in family medicine, testified that he would also recommend that Plaintiff reduce her BMI below 40 before undergoing total left knee replacement and revision right total knee arthroplasty. Dr. Barrier testified that it would be healthier if Plaintiff did lose weight, but the emergent requirement for loss of

weight derives from her need for her left total knee replacement or revision of her right total knee replacement.

¶ 42 The Commission's relevant conclusion is as follows:

> 8. When an employee suffers a compensable injury, "[m]edical compensation shall be provided by the employer." N.C. Gen. Stat. § 97-25(a) (2020). Medical compensation is defined as "medical, surgical, hospital, nursing, and rehabilitative services . . . *and other treatment* . . . as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability . . . ." N.C. Gen. Stat. § 97-2(19) (2020) (emphasis added). "[I]n case of a controversy arising between the employer and the employee, the Industrial Commission may order necessary treatment." N.C. Gen. Stat. § 97-25(c) (2020). Both Dr. Mallico and Dr. Barrier opined that reduction of Plaintiff's BMI was necessary for Plaintiff's safety and to achieve an optimal outcome from the revision right total knee arthroplasty surgery prescribed to treat her compensable right knee injury. Therefore, subject to the provisions of N.C. Gen. Stat. § 97-25.1, Plaintiff is entitled to payment of medical expenses incurred as a result of her bariatric surgery, as such surgery was medically necessary to assist Plaintiff achieve an optimal BMI to allow her to undergo the May 29, 2019 revision right total knee arthroplasty. N.C. Gen. Stat. §§ 97-2(19), 97-25, 97-25.1 (2020).

¶ 43 North Carolina General Statute § 97-25 "contains three grounds upon which an employer must provide future medical expenses[.]" *Little v. Penn Ventilator Co.*, 317 N.C. 206, 211, 345 S.E.2d 204, 208 (1986). "In order for the Commission to grant an employee's request to change treatment or health care provider, the employee

must show by a preponderance of the evidence that the change is reasonably necessary to effect a cure, provide relief, or lessen the period of disability." N.C. Gen. Stat. § 97-25(c) (2021). "'Logically implicit' in this statute is the requirement that the future medical treatment be 'directly related to the original compensable injury.'" *Parsons*, 126 N.C. App. at 542, 485 S.E.2d at 869 (quoting *Pittman v. Thomas & Howard*, 122 N.C. App. 124, 130, 468 S.E.2d 283, 286, *disc. rev. denied*, 343 N.C. 513, 472 S.E.2d 18 (1996)).

¶ 44        The question before this Court is whether Plaintiff's bariatric surgery is directly related to the compensable injury caused by her work accident on 5 August 2013. To answer this question, we must determine the degree of connection that is required between future medical treatment and a compensable injury for the treatment to be considered "directly related." In doing so, we are guided by our Supreme Court's foundational principle for addressing workers' compensation cases: "our Work[ers'] Compensation Act should be liberally construed to effectuate its purpose to provide compensation for injured employees or their dependents, and its benefits should not be denied by a technical, narrow, and strict construction." *Hollman v. City of Raleigh*, 273 N.C. 240, 252, 159 S.E.2d 874, 882 (1968); *see also Adams*, 349 N.C. at 680, 509 S.E.2d at 413.

¶ 45        Defendants argue that Plaintiff's weight problems were not caused by or directly resulted from the 5 August 2013 work accident; rather, Plaintiff's weight

problem preexisted the accident and therefore her need to undergo bariatric surgery is not directly related to the compensable injury. Defendants suggest that at most the need for weight loss surgery is indirectly related. We disagree.

¶ 46 As Plaintiff's counsel contended at oral argument, there is a direct line connecting the dots between Plaintiff's original compensable injury and the Commission's award for bariatric surgery. The 5 August 2013 work accident materially aggravated Plaintiff's preexisting right knee condition. This material aggravation in turn necessitated that Plaintiff undergo right knee surgery (the 29 May 2019 revision right total knee arthroplasty). For Plaintiff to undergo knee surgery, she had to lose weight. According to Dr. Mallico, Plaintiff could not lose weight fast enough due to her physical limitations for the knee surgery to be conducted safely and optimally without undergoing weight loss surgery. By connecting the dots, we can conclude that but for Plaintiff's need to have right knee surgery to treat her compensable injury, she would not have needed to undergo bariatric surgery. Therefore, while the existence of Plaintiff's weight problem was not directly related to the 5 August 2013 accident, the need for bariatric surgery is directly related.

¶ 47 This result aligns with the spirit of N.C. Gen. Stat. § 97-25. "Th[e] rule of causal relation is the very sheet anchor of the Work[ers'] Compensation Act. It has kept the Act within the limits of its intended scope,—that of providing compensation

benefits for industrial injuries, rather than branching out into the field of general health insurance benefits." *Duncan v. City of Charlotte*, 234 N.C. 86, 91, 66 S.E.2d 22, 25 (1951). The Commission made Findings of Fact 23 and 24, which Defendants concede are supported by competent evidence, indicating that based on the testimony of Dr. Mallico and Dr. Barrier the only way for Plaintiff to lose the weight needed to undergo right knee surgery was to undergo bariatric surgery first. Thus, an award for bariatric surgery is not branching out into the field of general health insurance benefits.

¶ 48        Accordingly, we hold that the Commission's Findings of Fact 23 and 24 support its Conclusion of Law 8, and therefore the Commission did not err in awarding Plaintiff compensation for bariatric surgery.

### III.    Conclusion

¶ 49        For the foregoing reasons, we conclude that the Full Commission did not err in allowing Plaintiff's motions to submit additional evidence and depositions, did not err in concluding that Plaintiff's need for right knee surgery was related to her work accident, and did not err in concluding that Plaintiff's need for bariatric surgery was directly related to her compensable injury.

AFFIRMED.

Judges COLLINS and GORE concur.